UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

KIM PAYTON-FERNANDEZ, Individually and on Behalf of All Other Persons Similarly Situated,

    Plaintiff,

-against-

BURLINGTON STORES, INC., BURLINGTON COAT FACTORY WAREHOUSE CORPORATION, BURLINGTON COAT FACTORY INVESTMENT HOLDINGS, INC., and BURLINGTON COAT FACTORY HOLDINGS, LLC,

    Defendants.

---

**COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Civil Action No

## INTRODUCTION

Plaintiff Kim Payton-Fernandez ("Plaintiff"), individually and on behalf of all other similarly situated, through counsel, upon personal knowledge as to herself, and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1. This action seeks to recover unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") for Plaintiff and other current and former Assistant Store Managers, and similarly situated current and former employees holding comparable positions but different titles (collectively, "ASMs"), employed by Defendants Burlington Coat Factory Warehouse Corporation, Burlington Coat Factory Investment Holdings, Inc., and Burlington Coat Factory Holdings, LLC ("Defendants" or "Burlington") within the United States, who worked more than 40 hours in any given workweek from three years

1

before the date this Complaint was filed until the entry of judgment in this matter (the "Relevant Period"), and who elect to opt into this action pursuant to 29 U.S.C. §216(b) (the "Collective").

2. Plaintiff alleges that Burlington has misclassified members of the Collective as exempt under federal overtime laws, and members of the Collective are: (i) entitled to unpaid wages from Defendants for all hours worked by them as well as for overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.,* for the Relevant Period.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants' principal place of business is within this District and Defendants are subject to personal jurisdiction in this District.

5. Venue is also proper pursuant to 28 U.S.C. 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7. The United States District Court for the District of New Jersey, Camden Vicinage is the proper court of jurisdiction and venue for this case. Defendant's Headquarters is in this vicinage, all corporate decisions regarding compensation are in this vicinage, the majority of Defendant's Corporate witnesses, who will be deposed and called as trial witnesses by Plaintiffs, work and reside in this vicinage. Additionally, this Court, specifically

the Honorable Joseph Rodriguez (USDJ Sr.) and the Honorable Joel Schneider (USMJ Ret.) spent hundreds of hours each (possibly thousands of hours each) presiding over the related cases of *Goodman v Burlington Coat, et. al.,* Civil Action No. 1:11-cv-04395-JHR-JS and *Kawa v Burlington Coat, et. al.,* Civil Action No. 1:14-cv-2787-JHR-JS, two cases which were litigated in this Courthouse over an 8 year period, involving the identical issues of corporate decision making, the identical legal issues as will arise in the present case, and the identical corporate witnesses. The issues of judicial economy and convenience of the parties all support an assignment of this case to District of New Jersey, Camden vicinage.

## THE PARTIES

8. Plaintiff is an individual residing in Bridgeport, Connecticut.

9. Plaintiff was employed by Defendants from approximately August 2013 until October 2020 as an ASM at Defendants' store located in Stratford, CT.

10. Upon information and belief, Defendant Burlington Stores, Inc. is a Delaware corporation with its principal place of business at 2006 Route 130 North, Burlington, New Jersey 08016. Defendant Burlington Stores, Inc, though its subsidiary Burlington Coat Factory Warehouse Corporation, operates 832 retails stores as of October 30, 2021, pursuant to its most recent 10-Q filing with the SEC.[1]

11. Upon information and belief, Defendant Burlington Coat Factory Warehouse Corporation, a subsidiary of Defendant Burlington Stores, Inc., is a Florida corporation with its principal place of business in Burlington, NJ.

---

[1] *Available at* https://www.burlingtoninvestors.com/static-files/652b0850-6050-4c4b-83ee-508d62e20294

12. Upon information and belief, Defendant Burlington Coat Factory Investment Holdings, Inc., a subsidiary of Defendant Burlington Stores, Inc., is a Delaware corporation with its principal place of business in Burlington, NJ.

13. Upon information and belief, Defendant Burlington Coat Factory Holdings, LLC., a subsidiary of Defendant Burlington Stores, Inc, is a Delaware corporation with its principal place of business in Burlington, NJ.

14. Defendants were and are doing business in New Jersey, including at their corporate headquarters located at 2006 Route 130 North, Burlington, NJ 08016 and at their retail locations throughout the state of New Jersey.

15. At all times relevant herein, Defendants have jointly employed Plaintiff and have been an employer within the meaning of Section 3(d) of the FLSA (29 U.S.C. § 203(d)).

16. At all times relevant herein, Defendants have been an enterprise jointly within the meaning of Section 3(r) of the FLSA (29 U.S.C. § 203(r)).

17. At all times relevant herein, Defendants have been an enterprise jointly engaged in commerce or the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA because it has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have moved in or were produced for commerce by any person. Further, Defendants have had (and have) a gross volume of sales, made or done business in an amount of at least $500,000.

18. At all times relevant herein, Plaintiff and all similarly situated employees were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

19. Defendants operate in concert and together in a common enterprise and through related activities, so that the actions of one may be imputed to the other, and/or they operate as joint employees within the meaning of the FLSA, and/or were otherwise legally responsible in some way for the matters alleged herein and proximately caused Plaintiff and similarly situated employees to be subject to the unlawful wage theft and pay practices described in this Complaint.

20. Defendants jointly suffered, permitted or directed the work of Plaintiff and similarly situated employees, and Defendants jointly benefited from work performed by Plaintiff and similarly situated employees.

21. While employed as an ASM, Plaintiff regularly worked in excess of 40 hours per workweek, without receiving overtime compensation as required by federal law.

22. Pursuant to Defendants' policy, pattern, and practice, Defendants did not pay Plaintiff and other similarly situated employees proper overtime wages for hours they worked for Defendants' benefit in excess of 40 hours in a workweek, constituting wage theft.

23. Defendants' decisions not to pay ASM's overtime, were made in this vicinage. Defendants were well aware of the legal requirement to pay ASM's overtime, and Judge Rodriguez on November 20th 2019, certified a collective action against defendants under the FLSA under identical facts herein.

24. Defendants' collective decision to continue to deny ASM's overtime, after eight years of litigation and a multimillion dollar settlement of identical issues in 2 prior cases in this Vicinage, can only be characterized as an intentional and willful violation.

## FLSA COLLECTIVE ACTION ALLEGATIONS

25. Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiff seeks to prosecute her FLSA claims as a Collective Action on behalf of all persons who are or were formerly employed by Defendants as Assistant Managers during the Collective Action Period.

26. Defendants are liable under the FLSA for, *inter alia*, failing to pay premium overtime wages to Plaintiff and other similarly situated employees.

27. Upon information and belief, there are potentially hundreds of similarly situated current and former Assistant Managers who have not been paid premium overtime wages in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join. Thus, notice should be sent to the Collective Action Members pursuant to 29 U.S.C. § 216(b).

28. The similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## FACTUAL ALLEGATIONS

29. Defendants employed Plaintiff and members of the Collective as Assistant Managers (including, as defined, comparable positions with different titles).

30. Defendants maintain control, oversight, and discretion over the operation of their retail locations, including their employment practices with respect to Plaintiff and the members of the Collective.

31. Plaintiff and the members of the Collective performed work as Assistant Managers that was integrated into the normal course of Defendants' business.

32. Consistent with Defendants' policy, pattern and/or practice, Plaintiff and the members of the Collective regularly worked in excess of 40 hours per workweek without

6

being paid overtime wages, in violation of the FLSA. Plaintiff regularly worked 50-55 hours per week as an Assistant Manager –but was never paid overtime for hours worked over 40 per week.

33. The number of shifts that Plaintiff and each individual member of the Collective worked per week can be ascertained from Defendants' records.

34. Defendants assigned and are aware of all of the work that Plaintiff and the members of the Collective have performed.

35. The work performed for Defendants by Plaintiff and the members of the Collective required little skill and no capital investment, nor did said work include managerial responsibilities or the exercise of meaningful independent judgment and discretion.

36. During the Collective Action Period, Plaintiff and the Collective Action Members performed the same primary job duties, including stocking shelves, working the cash register, taking out garbage, unloading freight, building displays, cleaning, folding and hanging clothes, and customer service.

37. During the Collective Action Period, the primary job duties of Plaintiff and the members of the Collective did not include hiring, firing, disciplining, or directing the work of other employees, or exercising meaningful independent judgment or discretion. There is an abundance of sworn testimony supporting this allegation, unearthed after protracted and expensive litigation in the Goodman and Kawa collective actions referred to above.

38. The primary job duties of Plaintiff and the members of the Collective did not materially differ from the duties of Defendants' non-exempt hourly paid employees, which

included many duties that were manual and non-exempt in nature. The performance of manual labor and non-exempt duties occupied the majority of Plaintiff's and the Collective members' working hours. There is an abundance of sworn testimony supporting this allegation, unearthed after protracted and expensive litigation in the Goodman and Kawa collective actions referred to above.

39. Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendants classified Plaintiff and the members of the Collective as exempt from coverage of the overtime provisions of the FLSA. There is an abundance of sworn testimony supporting this allegation, unearthed after protracted and expensive litigation in the Goodman and Kawa collective actions referred to above.

40. Upon information and belief, Defendants did not perform a person-by-person analysis of the job duties of Plaintiff and the members of the Collective when making the decision to classify all of them uniformly as exempt from the overtime protections of the FLSA. There is an abundance of sworn testimony supporting this allegation, unearthed after protracted and expensive litigation in the Goodman and Kawa collective actions referred to above.

41. Defendants established labor budgets to cover labor costs for the stores in which Plaintiff and similarly situated employees worked. Defendants did not provide sufficient resources in the labor budgets for non-exempt employees to complete all of the non-exempt tasks required in any given store operated by Defendants. Defendants knew or recklessly disregarded the fact that failing to provide sufficient resources in their store labor budgets resulted in Plaintiff and the members of the Collective (who were not paid overtime) working more than 40 hours in a workweek and primarily performing manual

and non-exempt duties during their workweeks, without receiving overtime compensation. This allowed Defendants to avoid paying additional wages (including overtime) to the non-exempt employees. There is an abundance of sworn testimony supporting this allegation, unearthed after protracted and expensive litigation in the Goodman and Kawa collective actions referred to above.

42. Defendants acted willfully and knew, by virtue of the fact that their Store Managers (the highest-ranking and true managers of any Burlington location, and as Defendants' authorized agents) actually saw Plaintiff and other similarly situated Assistant Managers perform primarily manual labor and non-exempt duties, that a result of the underfunded labor budgets was to limit the amount of money available to pay non-exempt employees to perform such work. Defendants knew that Plaintiff and other similarly situated employees were performing the work of non-exempt employees and, based on their actual job duties, Plaintiff and similarly situated employees did not fall under any exemptions under the FLSA. There is an abundance of sworn testimony supporting this allegation, unearthed after protracted and expensive litigation in the Goodman and Kawa collective actions referred to above.

43. As an experienced and practical business operating hundreds of department stores throughout the country, Defendants knew or recklessly disregarded the fact that by underfunding the labor budgets at their locations, Plaintiff and other similarly situated employees were primarily performing non-exempt duties and not performing activities that would suffice to There is an abundance of sworn testimony supporting this allegation, unearthed after protracted and expensive litigation in the Goodman and Kawa collective

actions referred to above. make their actual job duties comply with any overtime exemption under the FLSA.

44. Defendants' unlawful conduct, as described above, was willful or in reckless disregard of the applicable wage and hour laws pursuant to Defendants' centralized, company-wide policy, pattern, and practice of attempting to minimize labor costs by violating the FLSA. There is an abundance of sworn testimony supporting this allegation, unearthed after protracted and expensive litigation in the Goodman and Kawa collective actions referred to above.

45. As part of its regular business practice, Defendants have intentionally, willfully and repeatedly engaged in a policy, pattern and practice of violating the FLSA with respect to Plaintiff and the members of the Collective. This policy, pattern and practice includes, but it is not limited to, Defendants' knowledge of its obligations under the FLSA, and the kind of work that Plaintiff and the members of the Collective were and have been actually performing. As a result, Defendants have:

    a. willfully misclassified Plaintiff and the members of the Collective as exempt from the overtime requirements of the FLSA;

    b. willfully failed to pay Plaintiff and the members of the Collective overtime wages for hours they worked in excess of 40 hours per week; and

    c. willfully failed to provide enough money in their store-level labor budgets for Defendants' non-exempt employees to perform their duties and responsibilities, thereby forcing Defendants' exempt-classified Assistant Managers to perform such non-exempt tasks.

46. Defendants' willful violations of the FLSA are further demonstrated by the fact that throughout the Collective Action Period, and continuing to the present, Defendants failed to maintain accurate and sufficient time records for Plaintiff and the members of the Collective. Defendants acted recklessly or in willful disregard of the FLSA by instituting a policy and/or practice that did not allow Plaintiff and the members of the Collective to record all hours worked. There is an abundance of sworn testimony supporting this allegation, unearthed after protracted and expensive litigation in the Goodman and Kawa collective actions referred to above.

47. Due to the foregoing, Defendants' failure to pay overtime wages for work performed by Plaintiff and the members of the Collective in excess of 40 hours per workweek was willful and has been widespread, repeated and consistent.

**FIRST CAUSE OF ACTION:**
**(FAIR LABOR STANDARDS ACT:  UNPAID OVERTIME WAGES)**
**(Brought on Behalf of Plaintiff and All Members of the Collective)**

48. Plaintiff, on behalf of herself and all members of the Collective, re-allege and incorporate by reference paragraphs 1 through 44 as if they were set forth again herein.

49. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as described in this Complaint. There is an abundance of sworn testimony supporting this allegation, unearthed after protracted and expensive litigation in the Goodman and Kawa collective actions referred to above.

50. Plaintiff has consented in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b). See attached Exhibit A.

51. The overtime wage provisions set forth in 29 U.S.C. §§ 201, *et seq.*, apply to Defendants.

52. At all relevant times and continuing to the present, Defendants have had a policy and practice of refusing to pay premium overtime compensation to their Assistant Managers and similarly situated employees in comparable positions but holding different titles, for hours worked in excess of 40 hours per workweek.

53. As a result of Defendants' willful failure to compensate its employees, including Plaintiff and the members of the Collective, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

54. As a result of Defendants' willful failure to record, report, credit, and compensate its employees, including Plaintiff and the members of the Collective, Defendants failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

55. As a result of Defendants' policy and practice of minimizing labor costs by underfunding labor budgets for their restaurants, Defendants knew or recklessly disregarded the fact that Plaintiff and the members of the Collective were primarily performing manual labor and non-exempt tasks.

56. Due to Defendants' (a) failure to provide enough labor budget funds, (b) failure to take into account the impact of the underfunded labor budgets on the job duties of Plaintiff and the members of the Collective, (c) actual knowledge that the primary duties of Plaintiff and the members of the Collective were manual labor and other non-exempt tasks,

(d) failure to perform a person-by-person analysis of Plaintiff's and the Collective members' job duties to ensure that they were performing primarily exempt job duties, and (e) policy and practice that did not allow Plaintiff and the members of the Collective to record all hours worked, Defendants knew and/or showed reckless disregard that its conduct was prohibited by the FLSA. 29 U.S.C. § 255(a).

57. As a result of Defendants' FLSA violations, Plaintiff, on behalf of herself and the Collective Action Members, are entitled to (a) recover from Defendants unpaid wages for all of the hours worked, as premium overtime compensation; (b) recover an additional, equal amount as liquidated damages for Defendants' willful violations of the FLSA; and, (c) recover unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

58. Defendants' violations of the FLSA have been willful, thus a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the members of the Collective are entitled to and pray for the following relief:

a. Designation of this action as an FLSA collective action on behalf of Plaintiff and the members of the Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), to all similarly situated members of the Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

c. An award of unpaid wages for all hours worked in excess of 40 in a workweek at a rate of time and one-half of the regular rate of pay due under the FLSA;

d. An award of liquidated and punitive damages as a result of Defendants' willful failure to pay for all hours worked in excess of 40 hours in a workweek, at a rate of one and one-half times the regular rate of pay pursuant to 29 U.S.C. § 216;

e. An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

f. An order requiring defendants and their prior attorneys to preserve all evidence and discovery produced in the Goodman and Kawa cases referenced above;

g. An order removing any protective order, for full use in this case, all evidence and discovery produced in the Goodman and Kawa cases referenced above;

h. An award of prejudgment and post-judgment interest;

i. An award of costs and expenses of this action together with reasonable attorneys' and expert fees and an award of a service payment to the Plaintiff;

j. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FED. R. CIV. P. 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: February 4, 2022

By: /s Seth R. Lesser
Seth R. Lesser
Christopher M. Timmel*
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
E-mail: seth@klafterlesser.com
Christopher.timmel@klafterlsesser.co
Telephone: (914) 934-9200
www.klafterolsen.com

Michael A. Galpern
Javerbaum Wurgaft Hicks Kahn Wikstrom and Sinins, P.C.
1000 Haddonfield-Berlin Road, Suite 203,
Voorhees, NJ 08043
www.lawjw.com
E-mail: mgalpern@lawjw.com
Telephone: 856-596-4100

* to be admitted *Pro Hac Vice*

**ATTORNEYS FOR PLAINTIFF**