# EXHIBIT A

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement (this "Agreement" or "Settlement Agreement") sets forth the terms of the settlement of claims by and between Kim Payton-Fernandez, the named plaintiff ("Payton-Fernandez") in *Kim Payton-Fernandez v. Burlington Stores, Inc., et al.*, Civil Action No. 1:22-cv-00608 (the "Lawsuit"), which is pending in the United States District Court for the District of New Jersey (the "Court"), the Participating Collective Members (as defined below), Lavern Coleman (an opt-in who is to be added as a named plaintiff in the Lawsuit), Darniel Williams (an opt-in who is to be added as a named plaintiff in the Lawsuit), and Defendants Burlington Stores, Inc., Burlington Coat Factory Warehouse Corporation, Burlington Coat Factory Investments Holdings, Inc., and Burlington Coat Factory Holdings, LLC (together "Burlington") (all collectively referred to as the "Parties").

**RECITALS**

A.      On February 4, 2022, Payton-Fernandez filed the Lawsuit on behalf of herself and a proposed nationwide putative collective of Assistant Store Managers ("ASMs") allegedly due overtime compensation under the Fair Labor Standards Act ("FLSA") during the period when Burlington classified ASMs as exempt from overtime requirements (which they no longer are). ECF No. 1.

B.      On April 8, 2022, Burlington moved to compel Payton-Fernandez's claims to arbitration ("Motion to Compel Arbitration").  ECF No. 10.

C.      On April 8, 2022, Payton-Fernandez filed a Motion for Conditional Certification (ECF No. 12) and opt-in notices for ASMs Lavern Coleman and Darniel Williams.  ECF No. 11.

D.      The Parties agreed to stay briefing on the Motion to Compel Arbitration and on the Motion for Conditional Certification pending a private mediation. Thereafter, on July 12, 2022, the Court entered an order administratively terminating the Motion to Compel Arbitration and Motion for Conditional Certification pending mediation with the right to re-file upon letter application, and entered a 30-day stay.  ECF No. 22.

E.      After the exchange of relevant information, including each sides' views of the strengths and weaknesses of the Lawsuit, the respective likelihood of success, and the likely procedural paths each might take, as well as relevant payroll data and other information relative to the ASM position, the Parties engaged in a mediation on July 12, 2022, with mediator David Geronemus of JAMS, which resulted in a good faith settlement and the agreement of material terms in a Confidential Settlement Term Sheet signed by counsel that day.

F.      Burlington has denied and continues to deny all of the allegations in the Lawsuit, any and all wrongdoing, and that it is liable or owes any damages with respect to any of the causes of action in the Lawsuit.

G.      The Parties desire to settle and terminate fully and finally any and all differences and disputes between them arising out of the Lawsuit, and they enter into this Agreement for that purpose.

1

## FURTHER DEFINITIONS

<u>Defendants' Counsel</u> means Morgan, Lewis & Bockius LLP.

<u>Effective Date</u>.  The "Effective Date" of this Agreement shall mean the date of Final Judgment.

<u>Final Approval Order and Judgment</u>.  The "Final Approval Order and Judgment" are the Court's order granting final approval of the Settlement providing for entry of the Final Judgment, and releasing the claims as provided for herein, and providing for dismissal with prejudice of the Lawsuit pending before it and the Final Judgment on the same, substantially in the form attached as **Exhibit 1** hereto or as modified by the Court.

<u>Final Judgment</u> means the latest of:  (1) the date of final affirmance on an appeal of the Court's Final Approval Order and Judgment; (2) the date of final dismissal, with prejudice, of the last pending appeal from the Court's Final Approval Order and Judgment; or (3) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Court's Final Approval Order and Judgment.

<u>FLSA</u> means the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq.

<u>Last Known Address</u> means the most recently recorded mailing address for a Potential Collective Member as such information was contained in Burlington's records containing personnel information, the most recently recorded mailing address in Plaintiffs' Counsel's records, any mailing address a Potential Collective Member provides to the Parties or the Settlement Administrator, and any results of skip tracing conducted by the Settlement Administrator.

<u>Maximum Settlement Amount.</u>  In full and complete settlement of the Lawsuit and as consideration for the Releases and other terms herein, Burlington will pay the total gross maximum sum of ELEVEN MILLION U.S. DOLLARS AND 00/100 CENTS ($11,000,000.00) ("Maximum Settlement Amount"), which will satisfy and resolve the claims of Plaintiffs and all Participating Collective Members; any Separate Awards; the PAGA Payment; the Administration Costs; and any Cost and Fee Award.  Burlington will owe no further amounts for the Settlement.

<u>Net Settlement Amount</u>. The Net Settlement Amount is equal to the Maximum Settlement Amount minus the Cost and Fee Award, the Separate Awards, the PAGA Payment, and the Administration Costs.

<u>Notice</u> means the document provided to the Potential Collective Members to notify them of the Settlement, a copy of which is attached hereto as **Exhibit 2**.

<u>Notice Packet</u> refers collectively to the documents mailed to the Potential Collective Members pursuant to the terms of this Agreement, and includes the following documents: (1) Notice (**Exhibit 2**); and (2) the Settlement Check in the amount of each Potential Collective

Members' individual Settlement Payment.

Notice Mailing Deadline shall be the date on which the Settlement Administrator mails the Notice Packet to the Potential Collective Members. The mailing of the Notice Packet is to occur 30 days after the Effective Date.

PAGA Payment. The PAGA Payment shall mean the amount the Parties have agreed to allocate to resolve any and all claims under California's Private Attorneys General Act of 2004 ("PAGA"); Cal. Lab. Code §§ 2698, et seq. $15,000 of the Maximum Settlement Amount, as defined hereinafter, shall be allocated to the resolution of PAGA claims of the Participating Collective Members who worked as ASMs in California during the relevant time periods. Pursuant to PAGA, 75% of the PAGA Payment ($11,250) will be paid to the Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA Payment ($3,750) will be paid to eligible Participating Collective Members.

Participating Collective Members. The Potential Collective Members who timely cash or deposit a settlement check to join the Lawsuit and Plaintiffs.

Plaintiffs. Payton-Fernandez, Darniel Williams ("Williams"), and Lavern Coleman ("Coleman").

Plaintiffs' Counsel. Counsel for Plaintiffs and the Participating Collective Members, Klafter Lesser LLP and Javerbaum Wurgaft Hicks Wikstrom & Sinis, P.C.

Potential Collective Members. All Burlington ASMs during the Relevant Time Period who have any non-time barred and non-released wage and hour claims as described herein under state, local, and federal law.

Qualified Settlement Fund or QSF means the qualified settlement fund created and administered by the Settlement Administrator under Section 468B of the IRC and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, *et seq*.

Released Parties means Burlington (as defined above) and each of Burlington's current, former, and future affiliates, investors, parents, subsidiaries, related entities, predecessors, successors, divisions, joint ventures and assigns, and each of their respective past or present directors, officers, employees, partners, members, contractors, sub-contractors, employee benefit plan administrators and fiduciaries, trustees, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and corporate capacities.

Relevant Time Period. The time period of three years prior to the filing of the Lawsuit, February 4, 2019, until the date of reclassification of the ASM position by Burlington on February 28, 2021.

Separate Awards. Monetary awards that Burlington will not oppose for Payton-Fernandez, Coleman, and Williams in exchange for their General Releases. Payton-Fernandez's,

Coleman's, and Williams' Separate Awards shall be paid from the Maximum Settlement Amount.

Settlement.  The "Settlement" refers to the settlement and terms described in this Agreement.

Work Data means the following information regarding Potential Collective Members that Burlington will in good faith compile from its records and provide to the Settlement Administrator:  (1) full name; (2) Last Known Address; (3) Social Security Number; and (4) the information needed to determine the Settlement Payment for each Potential Collective Member according to the Allocation Formula (described below).

## THE SETTLEMENT

**NOW, THEREFORE,** in consideration of the mutual covenants and promises set forth below, the receipt and sufficiency of which are hereby acknowledged, the Parties expressly, knowingly and voluntarily agree as follows:

1.    Amended Collective Action/PAGA Complaint.  No later than 14 days after the execution by all Parties of this Agreement, Plaintiffs' Counsel agrees to file a California Private Attorneys General Act letter, which Burlington pre-approves, with the California Labor & Workforce Development Agency and then by the same deadline a First Amended Collective Action/PAGA Complaint, which Burlington pre-approves, adding a representative claim under PAGA on behalf of Coleman, who shall also be added as a named plaintiff, and on behalf of all other applicable allegedly aggrieved employees in California (the "PAGA Claims"). In addition, in the Amended Collective Action/PAGA Complaint, Plaintiffs' Counsel will also add Williams as a named plaintiff. No other substantive changes will be made.

2.    Approval of Settlement and Dismissal of Lawsuit.  Plaintiffs' Counsel shall prepare and file a mutually agreeable Unopposed Motion for Approval of Collective Action Settlement Agreement and Release ("Approval Motion") within 14 days of the execution by all Parties of this Agreement.  Plaintiffs' Counsel agrees to allow Burlington a reasonable time to review, make proposed edits, and approve the Approval Motion.

3.    Certification of the Collective for Purposes of Settlement Only.  For purposes of this Settlement only, the Parties stipulate that the Court may certify the Lawsuit as an FLSA opt-in collective action pursuant to 29 U.S.C. § 216(b) for all Potential Collective Members (the "FLSA Stipulation").  The FLSA Stipulation is made solely for purposes of the Settlement.  The FLSA Stipulation is in no way an admission that collective certification is proper or that certification requirements would be established by further discovery.

4.    Allocation of Net Settlement Amount.  After deduction of the amounts, if any, for the Cost and Fee Award, the Separate Awards, the PAGA Payment, and the Administration Costs, the remaining funds will be paid pro rata to each member of the Potential Collective Members. The pro-rata share of the Net Settlement Amount for each Potential Collective Member ("Settlement Payment") will be determined by dividing the total number of overtime

hours reflected in the Work Data for each Potential Collective Member by the total number of overtime hours reflected in the Work Data for all Potential Collective Members (the "Allocation Formula").  In no event shall a Potential Collective Member receive a Settlement Payment in an amount of less than $100.00 after applicable taxes. Settlement Payments shall be reduced by any required deductions for each Potential Collective Member, as set forth herein, including employee-side tax withholdings and deductions. The Settlement Administrator will report each Settlement Payment made to Participating Collective Member to the applicable state and federal government authorities, including the Internal Revenue Service, as required by law.

5.   Notice of Settlement and Check Mailing Process.

a.   The Potential Collective Members will not be required to submit a claim form as a condition of receiving their Settlement Payment.  Instead, the Settlement Administrator will mail all Potential Collective Members their Settlement Payment by sending a check to the Potential Collective Member's Last Known Address ("Settlement Checks") within 30 days of the Effective Date.  Each Settlement Check will contain language explaining that by depositing or cashing the Settlement Check, the Potential Collective Member will be opting-in to an FLSA collective action and releasing the claims in the Participating Collective Member Release.

b.   Within ten days after the Final Judgment, and provided only that the Settlement Administrator first executes a confidentiality and information security agreement satisfactory to Burlington, Burlington will provide to the Settlement Administrator the Work Data in an Excel format.  Based on the Work Data, the Settlement Administrator will calculate the individual Settlement Payments for each Potential Collective Member based on terms set forth in this Agreement.

c.   No more than three days after the Effective Date, the Settlement Administrator shall send Defendants' Counsel electronic wiring instructions to fund the QSF.

d.   No more than 10 business days after the Effective Date, Burlington will deposit into the QSF the Maximum Settlement Amount.

e.   The Parties agree that:  (1) the QSF shall be established pursuant to an order of the Court prior to the receipt of any monies from Burlington; (2) the QSF shall be established to resolve and satisfy the contested claims that have resulted, or may result, from the matters that are the subject of this Lawsuit and that are released by this Settlement; and (3) the QSF is established and its assets are segregated and shall be segregated (within a separately established fund or account) from the assets of Burlington and all related other persons.  The Settlement Administrator shall be responsible for establishing, administering and otherwise operating the QSF, including the preparation and filing of federal, state, and local tax returns.

f.   By the Notice Mailing Deadline, the Settlement Administrator will mail, by first-class mail, the Notice Packet to each Potential Collective Member at their Last

Known Address, unless modified by any updated address information that the Settlement Administrator obtains in the course of administration of the Settlement. All Settlement Checks will contain a notation on the memo line stating it is a settlement payment in the "Burlington FLSA Action." Additionally, the checks shall state: "By endorsing and/or cashing this check, I acknowledge that I have read the Notice and that I am releasing the claims as set forth in the Notice" immediately next to the space where the check is to be endorsed by the payee. Potential Collective Members who cash or deposit their individual Settlement Payment will become Participating Collective Members and release the Participating Collective Members' Released Claims.

g. The Settlement Administrator will use standard devices, including the National Change of Address database or equivalent, to obtain forwarding addresses prior to mailing the Notice Packet and will use appropriate skip tracing to take appropriate steps to increase the probability that the Notice Packet will be received by all Potential Collective Members.

h. All Settlement Checks issued to Potential Collective Members shall remain negotiable for a period of 90 calendar days from the date of the Settlement Administrator's mailing as reflected by the postmark on the mailing. To the extent that Settlement Checks are not deposited or cashed by a Potential Collective Member within 30 calendar days of mailing, the Settlement Administrator shall send a reminder postcard to such Potential Collective Members. Reasonable extensions of the 90 calendar day period will be granted by the Settlement Administrator, if needed, as to deceased Potential Collective Members or to Potential Collective Members whose Notice Packets are returned as undeliverable and the Settlement Administrator is able to determine their new address and remail the Notice Packet to such Potential Collective Members. The Settlement Administrator shall return all remaining funds in the QSF to Burlington within 150 calendar days after the Notice Mailing Deadline.

i. While held in the QSF, the funds in the QSF will accrue interest at the then-current T-bill rate.

j. Following the mailing of the Notice Packets, the Settlement Administrator shall provide counsel for the Parties with a written confirmation of this mailing.

k. After mailing the Notice Packets to the Potential Collective Members, the Settlement Administrator will, on a weekly basis, provide updates to Defendants' Counsel and Plaintiffs' Counsel as to the number of Potential Collective Members who have cashed or deposited their Settlement Checks.

l. The Settlement Administrator shall provide to counsel for the Parties a list of the names of all Participating Collective Members, and a redacted copy of the cashed or deposited checks no later than 150 calendar days after the Notice Mailing Deadline. Defendants' Counsel will then file with the Court redacted versions of

the cashed or endorsed checks along with a declaration listing the names of all Participating Collective Members who have cashed and/or deposited their checks and thus released their Released Claims.

m. To the extent a Potential Collective Member disputes their Settlement Payment amount, they may produce evidence, such as pay stubs, W-2 forms, or records from Burlington, to the Settlement Administrator showing that such information is inaccurate. The Parties will mutually decide the dispute using their reasonable judgment to determine if a disputed claim should be adjusted. Burlington's records will be presumed correct, but if the Parties do not agree to the resolution of the disputed claim, the dispute shall be promptly presented to the Court for resolution, which resolution will be communicated to the Potential Collective Member by a letter to be mailed within 3 business days of the final decision. All disputes must be submitted within 90 days of mailing or remailing of the Potential Collective Member's individual Settlement Check.

6.    Uncashed Settlement Checks.  All funds remaining from any uncashed Settlement Checks after (1) the mailing of a reminder postcard to all Potential Collective Members who have not cashed their uncashed Settlement Check within 30 days after the initial mailing, and (2) the Settlement Administrator has done a skip trace to find updated addresses for any returned checks and sent new checks to such addresses and (3) 150 calendar days after the Notice Mailing Deadline, shall be returned to Burlington by the Settlement Administrator.

7.    Allocation of the PAGA Payment. The portion of the PAGA Payment allocated to Potential Collective Members who worked as ASMs in California during the relevant time period ("PAGA Members") will be paid pro rata to each PAGA Member by dividing the total number of overtime hours reflected in the Work Data for each PAGA Member by the total number of overtime hours reflected in the Work Data for all PAGA Members.

8.    Releases.

a. Each Participating Collective Member will release—through the date they cash and/or deposit a Settlement Check and join this Lawsuit—any and all wage and hour claims, rights, and causes of action, whether known or unknown, under any federal, state, or local wage and hour law, including but not limited to the Fair Labor Standards Act, including without limitation statutory, constitutional, contractual, and common law claims for wages, damages, penalties, attorneys' fees, restitution, or equitable relief to the extent relating to or deriving from a wage and hour claim (including claims for overtime wages or any other wages) relating to employment at the Released Parties (the "Participating Collective Members' Released Claims"). The Participating Collective Members' Released Claims will not release any presently pending claims, other than this Lawsuit, asserted against the Released Parties as of the date of the execution of the Settlement Agreement.  The Parties agree that with the Settlement Checks the Potential Collective Members will be informed of the effect of the Participating

7

Collective Members' Released Claims.

b.  Upon Burlington's issuance of the PAGA Payment to the LWDA and the PAGA Members, each PAGA Member, the State of California, and the LWDA will release, through the Effective Date, the PAGA Claims as against any and all of the Released Parties (as defined herein) from the beginning of time through the Effective Date.

c.  Payton-Fernandez, Coleman, and Williams will execute a separate General Agreement and Release ("General Release") covering the Released Parties, in which they will release any and all claims and causes of action, whether known or unknown, that they may have against any and all of the Released Parties (as defined herein) from the beginning of time through the date the Settlement Agreement is signed.  The claims and causes of action to be released by Payton-Fernandez, Coleman, and Williams in the General Release include, but are not limited to, the following: wage and hour claims, contract claims; claims for salary, incentive payments, benefits, bonuses, restricted stock awards, stock options, severance pay, commissions, or vacation pay; claims sounding in negligence or tort; fraud claims; claims for medical bills; all matters in law, in equity, or pursuant to statute, including damages, attorneys' fees, costs, and expenses; and, without limiting the generality of the foregoing, to all claims, including, but not limited to, those arising under the Fair Labor Standards Act; Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Americans with Disabilities Act; 42 U.S.C. § 1981; the Age Discrimination in Employment Act (if applicable); the Older Workers' Benefit Protection Act (if applicable); the Employee Retirement Income Security Act; the Genetic Information Nondiscrimination Act; the Family and Medical Leave Act; the wage/hour laws and regulations of any state; and any other federal, state, or local law, statute, or ordinance affecting Payton-Fernandez's, Coleman's, and Williams' employment with Burlington and any interactions with any of the Released Parties.

Payton-Fernandez, Coleman, and Williams acknowledge the language of Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASING PARTY.

Payton-Fernandez, Coleman, and Williams expressly waive the protection of

Section 1542 (and analogous state provisions). Payton-Fernandez, Coleman, and Williams understand and agree that claims or facts in addition to those which are now known or believed by them to exist may hereafter be discovered. It is Payton-Fernandez's, Coleman's, and Williams' intention to settle and fully release all of the claims they now have against the Released Parties, whether known or unknown, suspected or unsuspected.

Payton-Fernandez, Coleman, and Williams understand and agree that this release does not release any claims that the law does not permit them to release.  They further understand and agree that they are not releasing any claim that relates to: (i) their rights to enforce this Agreement; (ii) their rights, if any, to claim government-provided unemployment benefits; or (iii) any rights or claims which may arise or accrue after they sign this Agreement.

9.  Separate Awards.  Subject to Court approval, Payton-Fernandez, Coleman, and Williams shall each receive, and Burlington shall not oppose, Separate Awards of $10,000.00 each in recognition of their effort and work in prosecuting the Lawsuit on behalf of the Potential Collective Members.  The Separate Awards shall be allocated 100% as non-wage income, for which a Form 1099 shall be issued to Payton-Fernandez, Coleman, and Williams.  Payton-Fernandez, Coleman, and Williams shall be solely responsible for any and all tax liabilities, including any penalties and interest, arising from the Separate Awards. Should the Court award a lesser sum or nothing, the residual shall be included in the Net Settlement Amount.  The Settlement Administrator will pay the Separate Awards within 30 days of the Court's approval of the Separate Awards and the Effective Date, whichever is later.

10.  Cost and Fee Award.  The Cost and Fee Award shall consist of Plaintiffs' Counsels' attorneys' fees and litigation costs, and Burlington will not oppose a Cost and Fee Award of no more than 30% of the Maximum Settlement Amount.  The Cost and Fee Award shall be paid from the Maximum Settlement Amount and by the Settlement Administrator by wire to Plaintiffs' Counsel within 20 days of the Effective Date.  The Cost and Fee Award awarded by the Court shall be the full, final and complete payment of all attorneys' fees, costs and expenses by Burlington in connection with the Lawsuit, including any attorneys' fees, costs or expenses related to the administration of this Settlement.  Except as provided herein, the Parties shall bear their own fees, costs and expenses related to each and all of the Lawsuits and will not seek reimbursement from any other party.  Should the Court award a lesser sum or nothing, the residual shall be included in the Net Settlement Amount.

11.  Additional Claims.  Plaintiffs' Counsel acknowledges that, other than Payton-Fernandez, Coleman, Williams, and the Participating Collective Members, they have no other current clients who have claims against the Released Parties, and have no current plan or intention to file, join in, assist with, or solicit others to file or join in or assist with any sort of legal action against the Released Parties. The Parties agree that nothing in this agreement between the Parties shall be construed as or act as a restriction of Plaintiffs' Counsel (and any firm for which they are associated) to practice law in accordance with their respective state rules of professional conduct.

9

12.    Settlement Administrator.  JND Class Action Administration, LLC shall serve as the third-party administrator ("Administrator" or "Settlement Administrator") in connection with the Settlement. All costs and fees associated with the retention of the Settlement Administrator (the "Administration Costs") will be paid from the Maximum Settlement Amount.

a.    The Settlement Administrator shall serve as the administrator of the Settlement and perform the services described in this Agreement, including, without limitation:

i.    Receive from the Parties and update and maintain as necessary, a mailing list, prepare, mail, and email (to any emails for which the Parties have this information) the Notice, and carry out the follow-up methods of communication set forth herein to effectuate notice;

ii.    Calculate the Settlement Payments to Potential Collective Members including calculating applicable payroll taxes and withholdings, employer payroll taxes, and, following the Final Judgment, issue and mail settlement checks to the Potential Collective Members, and handle the payment of employee and employer taxes with appropriate taxing authorities.

iii.    Pay, from the Maximum Settlement Amount, the Cost and Fee Award, Separate Awards, the portion of the PAGA Payment to the LWDA, and the Administration Costs as the Court may approve;

iv.    Resolve any disputes submitted by Potential Collective Members concerning the amount of their Settlement Payment;

v.    Keep the Parties' counsel apprised of the status of all mailings of Notices and Settlement Checks, and any returned mailings, and provide weekly reports relating to the same; and

vi.    Perform any other obligations established in this Agreement or subsequently agreed to by the Parties.

b.    All disputes relating to the Settlement Administrator's ability and need to perform its duties shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Agreement, until all payments and obligations contemplated by this Agreement have been fully carried out.

c.    The Administration Costs are estimated to be $35,000.00.  The estimated Administration Costs shall be approved by the Court and shall be paid from the Maximum Settlement Amount.

13.    Treatment of Settlement Payments. In light of the claims and theories asserted in the Lawsuit, all Settlement Payments will be allocated as follows:  50% of the Settlement Payment to each Participating Collective Member shall be deemed payment for alleged unpaid

10

overtime wages and shall be subject to all applicable taxes and withholdings for which an IRS Form W-2 will issue.  The remaining 50% of the Settlement Payment to each Participating Collective Member shall be deemed payment in settlement for claims of liquidated damages and all other non-wage income and will be paid subject to an IRS Form 1099.

14.    Tax Treatment Disclaimer: The Participating Collective Members agree that Burlington and Plaintiffs' Counsel have not made any representations regarding the taxability of any payments made pursuant to this Agreement. The Participating Collective Members agree and warrant that they have been and remain solely responsible for the timely payment of all taxes owed by each of them, if any, which have been due, or which may become due to any governmental authority from receipt of any funds paid by Burlington pursuant to this Agreement.

15.    No Credit Towards Benefit Plans. The Settlement Payments made to the Participating Collective Members under this Settlement, as well as other payments made pursuant to this Settlement, will not be used to calculate any additional benefits under any benefit plans to which any Participating Collective Member may be eligible, including, but not limited to profit sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, and any other benefit plan. Rather, it is the Parties' intention that this Settlement will not affect any rights, contributions, or amounts to which any Participating Collective Member may be entitled under any benefits plans, all of which are specifically excluded from the Participating Collective Members' Released Claims.

16.    Entry of Judgment.  In conjunction with their Approval Motion, Plaintiffs will request that the Court, among other things, (a) enter the Final Approval Order and Judgment in accordance with this Agreement; (b) approve the Settlement as fair, reasonable and adequate; (c) dismiss the Lawsuit with prejudice, and (d) permanently enjoin all Participating Collective Members from pursuing and/or seeking to reopen claims that have been released or dismissed under this Agreement.

17.    Agreement to Approval by Magistrate Judge.  The Parties agree that within five business days of the signing of this Settlement Agreement, that they will jointly agree to file a Notice, Consent, and Reference of a Dispositive Motion to a Magistrate Judge form to enable the Magistrate Judge assigned to this case to hear the proposed settlement approval and enter the Final Approval Order and Judgment.

18.    Confidentiality and Non-Disparagement.  Neither Plaintiffs Payton-Fernandez, Williams, Coleman nor Burlington nor their respective counsel shall directly or indirectly engage in any disparagement of any type related to this Lawsuit, or each other, or the Settlement. Neither Plaintiffs nor their counsel will issue any press release or initiate communication with the media about the Settlement.  If Plaintiffs' Counsel is contacted by the media, they shall limit any comments to the statement "The matter has been resolved.  Please review the public filings for additional information." Notwithstanding the foregoing, Plaintiffs' Counsel may disclose information that has been made public through a document filed on the District of New Jersey's docket or that of any appellate court concerning this Lawsuit on its website or otherwise.  In addition, nothing herein precludes Plaintiffs' Counsel from otherwise complying with any applicable ethical rules.  Nothing in this paragraph shall prevent Burlington from communicating

11

about the Lawsuit or Settlement as needed for legitimate business purposes or prevent Plaintiffs from communicating about the Lawsuit or Settlement with their personal counsel or tax advisers.

    19.    <u>Settlement Not Approved.</u>   If, for any reason, the Settlement is not approved, the previously agreed-upon Term Sheet will not be enforceable and admissible in court pursuant to the Federal Rules of Civil Procedure and Federal Rules of Evidence.

    20.    <u>Privacy of Documents and Information</u>. Plaintiffs' Counsel agrees that none of the documents and information provided to them by Burlington and/or the Settlement Administrator shall be used for any purpose other than prosecution or settlement of the Lawsuit or the defense or prosecution of a malpractice action or defense of any state bar complaints.

    21.    <u>No Admission of Liability.</u>  Neither the previously agreed-upon Term Sheet, the Settlement documents, nor the Settlement shall be construed as an admission of liability on the part of Burlington.  Rather, Burlington asserts that its ASMs were always properly classified as exempt from the overtime requirements of the FLSA and any other applicable law.  Burlington further denies any wrongdoing or that any liability or damages are owed to the Plaintiffs, the Potential or Participating Collective Members, and denies that overtime pay of any kind, or any other relief, is owed to Potential or Participating Collective Members.  Burlington enters into this Agreement and Settlement to avoid the risk, expense, and burden of continued litigation.

    22.    <u>No Admission of Propriety of Collective, Class or Representative Treatment</u>.  The Term Sheet, this Agreement, any other Settlement documents, and the Settlement shall not be construed as an admission by Burlington that any collective or class or representative action is proper for certification either as an FLSA collective action or a Federal Rule of Civil Procedure Rule 23 class action or a PAGA representative action.  Accordingly, this Settlement Agreement shall not be cited, and is not admissible, in any proceeding as evidence that certification of a collective under the Fair Labor Standards Act or a Rule 23 class or a PAGA representative action is proper. If this Settlement is not approved or is otherwise terminated or voided, there will be no waiver, estoppel, or preclusive effect given to this Agreement.

    23.    <u>Counterparts.</u>  This Settlement Agreement may be executed in one or more counterparts.  All executed counterparts shall be deemed to be one and the same instrument.

    24.    <u>Binding Agreement.</u>  This Settlement Agreement shall be binding upon the Plaintiffs and Burlington and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of Burlington, Plaintiffs, and the Participating Collective Members.  Any failure of a party to enforce any provisions of this Settlement Agreement shall not be a waiver of future performance of those provisions or of any other provisions of this Settlement Agreement.

    25.    <u>Construction.</u>  Plaintiffs and Burlington and their respective counsel have reviewed this Settlement Agreement prior to signing the Settlement Agreement.  Therefore, the normal rule of construction that any ambiguity or uncertainty in a writing shall be interpreted against the party drafting the writing shall not apply to any action on this Settlement Agreement.

26.     Governing Law.  This Settlement Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New Jersey, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

27.     Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Settlement Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Settlement Agreement and of the settlement contemplated thereby.

28.     Disputes.  Nothing herein shall bar any party from seeking to enforce any provision in this Settlement Agreement.  Any dispute as to the terms of this Settlement shall be mediated in the first instance by the mediator David Geronemus until the date that Plaintiffs' Counsel filed the Approval Motion.  Thereafter, any disputes shall be resolved by the Court pursuant to Paragraph 27 entitled Continuing Jurisdiction.

29.     Amendment or Modification. No amendment, change, or modification to this Settlement Agreement will be valid unless in writing and signed, either by the Plaintiffs and Burlington or their respective counsel.

30.     Acknowledgment that the Settlement is Fair and Reasonable. Plaintiffs and Burlington believe this Settlement Agreement is a fair, adequate and reasonable settlement of the Lawsuit and have arrived at this Settlement after arm's-length negotiations and in the context of adversarial litigation, taking into account all relevant factors, present and potential. Plaintiffs and Burlington further acknowledge that they are each represented by competent counsel and that they have had an opportunity to consult with their counsel regarding the fairness and reasonableness of this Settlement.

31.     Invalidity of Any Provision. Before declaring any provision of this Settlement Agreement invalid, the Court will first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedents so as to find all provisions of this Settlement Agreement as valid and enforceable.

32.     Waiver of Certain Appeals. Plaintiffs agree to waive appeals; except, however, that Plaintiffs or Plaintiffs' Counsel may appeal any reduction to the attorneys' fees and litigation costs below the amount they request from the Court, and either Plaintiffs or Burlington may appeal any Court order that materially alters the Settlement Agreement's terms.

33.     Enforceability of Agreement. Plaintiffs and Burlington warrant that they understand and have full authority to enter into this Settlement Agreement, and further intend that this Settlement Agreement will be fully enforceable and binding on them and agree that it will be admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding any mediation confidentiality provisions that otherwise might apply under federal or state law.

34.     Sole and Entire Agreement.   This Settlement Agreement sets forth the entire
agreement between Plaintiffs and Burlington. This Settlement Agreement fully supersedes and
replaces any and all prior oral or written agreements or understandings between the Plaintiffs and
Burlington pertaining to the subject matter hereof, including the Term Sheet, unless this
Settlement Agreement is found unenforceable.

Executed this 21st day of September 2022 by:

DocuSigned by:

*karen Leu*

1841D28305A8475...

Burlington Stores, Inc., Burlington Coat Factory
Warehouse Corporation, Burlington Coat Factory
Investments Holdings, Inc., and Burlington Coat
Factory Holdings, LLC

Print Name: Karen Leu

Title: General Counsel

Executed this __ day of September 2022 by: _____

Kim Payton-Fernandez

Executed this __ day of September 2022 by: _____

Darniel Williams

Executed this __ day of September 2022 by: _____

Lavern Coleman

14

     34.     Sole and Entire Agreement.  This Settlement Agreement sets forth the entire agreement between Plaintiffs and Burlington.  This Settlement Agreement fully supersedes and replaces any and all prior oral or written agreements or understandings between the Plaintiffs and Burlington pertaining to the subject matter hereof, including the Term Sheet, unless this Settlement Agreement is found unenforceable.

Executed this __ day of September 2022 by: _____

                                      Burlington Stores, Inc., Burlington Coat Factory Warehouse Corporation, Burlington Coat Factory Investments Holdings, Inc., and Burlington Coat Factory Holdings, LLC

                                      Print Name:  Karen Leu

                                      Title:  General Counsel

Executed this 21st day of September 2022 by: _____
Kim Payton-Fernandez

Executed this 21st day of September 2022 by: _____
Darniel Williams

Executed this 21st day of September 2022 by: _____
Lavern Coleman

14

EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
---------------------------------------------X   :
KIM PAYTON-FERNANDEZ,                         :   Case No.: 1:22-cv-00608-NLH-AMD
LAVERN COLEMAN, and DARNIEL                   :
WILLIAMS, Individually and on                 :
Behalf of All Other Persons Similarly         :
Situated,                                     :
                                              :
                    Plaintiffs,               :
                                              :
               -against-                      :
                                              :
BURLINGTON STORES, INC.,                      :
BURLINGTON COAT FACTORY                       :
WAREHOUSE CORPORATION,                        :
BURLINGTON COAT FACTORY                       :
INVESTMENTS HOLDINGS, INC.,                   :
and BURLINGTON COAT                           :
FACTORY HOLDINGS, INC.,                       :
                                              :
                    Defendants.               :
---------------------------------------------X   :
```

**[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION
FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT
AGREEMENT AND RELEASE AND ENTERING FINAL JUDGMENT**

WHEREAS Plaintiffs Kim Payton-Fernandez, Lavern Coleman, and Darniel

Williams, individually and on behalf of all other persons similarly situated

("Plaintiffs") have moved unopposed for an order (i) approving a proposed

collective action settlement agreement ("Settlement Agreement"); (ii) conditionally

certifying a proposed FLSA Collective, for settlement purposes only, under 28

U.S.C. 216(b); (iii) approving the expense and fee request in the amounts of $18,443.21 and $3,281,556.88, respectively; (iv) approving the service awards for the three named Plaintiffs in the amount $10,000 each; and (v) approving payment of the Settlement Administrator's costs; and

WHEREAS, having reviewed and considered the proposed Settlement Agreement, Plaintiffs' Memorandum of Law, and the declaration filed in support of Plaintiffs' Motion; and

WHEREAS the Court is satisfied that the terms and conditions set forth in the Settlement Agreement are the result of good faith, arms' length settlement negotiations between competent and experienced counsel for both the Plaintiffs and Defendants;

**IT IS HEREBY ORDERED** that Plaintiffs' Unopposed Motion is **GRANTED,** and the Parties' proposed Settlement Agreement is approved.

**IT IS FURTHER ORDERED** that the proposed FLSA Collective is certified under 28 U.S.C. 216(b).

**IT IS FURTHER ORDERED** that Plaintiffs' Counsels' expense and fee requests are approved as requested.

**IT IS FURTHER ORDERED** that the requested service awards for the three named Plaintiffs are approved.

**IT IS FURTHER ORDERED** that payment of the Settlement Administrator's costs are approved.

**IT IS FURTHER ORDERED** that Plaintiffs' claims are dismissed with prejudice, and all Participating Collective Members as defined in the Settlement Agreement are permanently enjoined from pursuing and/or seeking to reopen the dismissed and released claims.

**AND IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiffs' motion is otherwise in all respects hereby **GRANTED**, and FINAL JUDGMENT is hereby **ENTERED**.

Dated: _____          _____
                                Honorable Ann Marie Donio
                                United States Magistrate Judge

3

# EXHIBIT 2

TPA LETTERHEAD

ADDRESS 1
ADDRESS 2
ADDRESS 3
ADDRESS 4

      Re:    *Payton-Fernandez et al. v. Burlington Stores, Inc., et al.*
                   Case No. 22-cv-00608-NLH-SAK (D.N.J.)
                   <u>Settlement Notification and Distribution</u>

Dear [NAME]:

      The enclosed check represents your share of a settlement in the lawsuit *Payton-Fernandez et al. v. Burlington Stores, Inc., et al.* (Case No. 22-CV00608-NLH-AMD) (D.N.J.). The federal court for the District of New Jersey has approved this nationwide settlement. You can join the settlement by depositing or cashing the enclosed check – nothing further is required. If you do not cash or deposit the check, you will not share in the settlement and you will retain your claims. A full explanation of why you are receiving this check follows.

     *1. Why am I getting this check?*

      On February 4, 2022, a former Burlington employee filed a lawsuit claiming that Assistant Store Managers ("ASMs") who were paid on a salary basis were improperly classified by Burlington as exempt employees under federal law for overtime purposes. The lawsuit claimed that ASMs' "primary duty" was not management, but rather the same tasks as hourly employees. The lawsuit sought unpaid overtime pay for ASMs nationwide for weeks in which they worked more than 40 hours. Burlington denies that the ASMs were misclassified and maintains that they were properly paid. The time frame for the claims (the "relevant period") goes back three years from the date the lawsuit was filed and ends on February 28, 2021, when Burlington voluntarily reclassified the ASM position and began paying overtime.

      After the lawsuit was filed, instead of engaging in long and costly litigation, the parties agreed to conduct a mediation, in hope that the case may be resolved early. The parties met in July 2022, and, with the help of a third-party mediator, successfully resolved the case. The Settlement, which has been approved by the Court, provides for the sum of $11,000,000 to be paid by Burlington to resolve all the overtime claims of approximately 1,715 present and former ASMs. Burlington's records indicate that you are one of the ASMs entitled to share in the Settlement.

     *2. What do I need to do now?*

      You now have two options.

      *One*, you may cash or deposit your check and join the case. You can use the funds immediately and without restriction. As indicated on the check itself, by cashing or depositing the check, you agree to release your claims against Burlington, *i.e.,* you will not be able to sue Burlington again over the same claims for which you are being paid today.

Specifically, by cashing or depositing your check, you will release—through the date you cash and/or deposit the check and as a result join the lawsuit—any and all wage and hour claims, rights, and causes of action, whether known or unknown, under any federal, state, or local wage and hour law, including but not limited to the Fair Labor Standards Act, including without limitation statutory, constitutional, contractual, and common law claims for wages, damages, penalties, attorneys' fees, restitution, or equitable relief to the extent relating to or deriving from a wage and hour claim (including claims for overtime wages or any other wages) relating to employment at Burlington ("Burlington" as used in the release includes Burlington Stores, Inc., Burlington Coat Factory Warehouse Corporation, Burlington Coat Factory Investments Holdings, Inc., and Burlington Coat Factory Holdings, LLC) and each of Burlington's current, former, and future affiliates, investors, parents, subsidiaries, related entities, predecessors, successors, divisions, joint ventures and assigns, and each of their respective past or present directors, officers, employees, partners, members, contractors, sub-contractors, employee benefit plan administrators and fiduciaries, trustees, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and corporate capacities (collectively, the "Released Parties").  You will not, however, release any presently pending claims, other than the lawsuit, asserted against the Released Parties as of the date of the execution of the parties' settlement agreement.

Importantly, please cash or deposit the check on or before its printed void date. Checks will not be re-issued after the void date. Note that the amount of your payment reflects, on a pro-rated basis, the actual overtime hours that you are recorded as having worked over the relevant period according to Burlington's time records.  For example, if Burlington's time records reflect that you worked 100 hours of overtime during the relevant period, that 100 hours would be divided by the total number of overtime hours worked by all ASMs during the relevant period to determine your percentage share.

Once you cash or deposit the check, the Settlement Administrator will separately send you appropriate IRS forms, including a Form W-2 for 50% of your payment and IRS Form 1099-MISC for the other 50% of your payment. The reason for this is because half of your settlement payment is treated as unpaid overtime back wages, and subject to withholding, while the other half is considered to be "liquidated" damages and free from withholding. As well, the Settlement Administrator cannot provide tax advice. Nor can the plaintiffs' lawyers.  Accordingly, we suggest that you consult your tax advisor if you are not certain about the tax treatment of this payment.

*Two*, you may choose not to cash or deposit the check. If you do not cash or deposit your check, you do not join the lawsuit and do not take part in the settlement.  You will not release any claims against Burlington.

### 3. Additional Questions

If you have any questions about the above, please consult the Settlement Administrator at _____@_____. Or, you may directly contact counsel for Plaintiffs and the settlement collective by contacting the following:

KLAFTER LESSER LLP
Seth R. Lesser, Esq.

Christopher Timmel, Esq.
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200
Email: Nancy.Velasquez@klafterlesser.com

JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C.
Michael Galpern, Esq.
1000 Haddonfield Berlin Road
Suite 203
Vorhees, New Jersey 08043
Telephone: (865) 596-4100
Email: mgalpern@lawjw.com

You may also directly contact counsel for Burlington by contacting the following:

MORGAN, LEWIS & BOCKIUS LLP
August W. Heckman III, Esq.
502 Carnegie Center
Princeton, New Jersey 08540
Phone: 609.919.6696
august.heckman@morganlewis.com

Thank you for your attention, and congratulations on the successful settlement.

Regards,

*Payton-Fernandez et al.  v. Burlington Stores, Inc. et al.*
Settlement Administrator