[D.I. 29]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

KIM PAYTON-FERNANDEZ, LAVERN
COLEMAN, and DARNIEL WILLIAMS,
individually and on behalf of
all other persons similarly
situated,

          Plaintiffs,

    v.

BURLINGTON STORES, INC., et
al.,

        Defendants.

Civil No. 22-608 (AMD)

**OPINION AND
ORDER**

**APPEARANCES**:

Michael A. Galpern, Esq.
Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins
Laurel Oak Corporate Center
1000 Haddonfield-Berlin Road
Suite 203
Voorhees, NJ 08043

Seth Richard Lesser, Esq.
Klafter Lesser LLP
Two International Drive
Suite 350
Rye Brook, NY 10573

    *Counsel for Plaintiffs*

August W. Heckman, III, Esq.
Rudolph J. Burshnic, Esq.
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, NJ 08540-6241

    *Counsel for Defendants*

**DONIO**, **Magistrate Judge:**

In this case Plaintiffs, Kim Payton-Fernandez, Lavern Coleman, and Darniel Williams, allege that Defendants, Burlington Stores, Inc., Burlington Coat Factory Warehouse Corporation, Burlington Coat Factory Investment Holdings, Inc., and Burlington Coat Factory Holdings, LLC, violated federal and California wage and hour laws by misclassifying them as exempt under federal overtime laws and failing to pay them overtime wages. The parties reached a settlement through private mediation, and Plaintiffs now move for court approval of the settlement.[1] Defendants do not oppose the motion. The Court held a telephonic conference in connection with this motion on January 19, 2023 and directed supplemental briefing to be filed. (Order [D.I. 42], Jan. 19, 2023.) Plaintiffs' counsel filed a supplemental brief on February 2, 2023. (Letter from Seth R. Lesser, Esq. (hereinafter, "Pls.' Supp. Letter") [D.I. 44], Feb. 2, 2023.) The Court has considered the submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court denies the motion without prejudice.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of the undersigned on October 24, 2022. (Notice, Consent, and Reference of a Civil Action to a Magistrate Judge [D.I. 33].)

By way of background, on February 4, 2022, Plaintiff Payton-Fernandez, individually and on behalf of similarly situated others within the United States, filed a complaint against Defendants seeking unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (Compl. [D.I. 1], p. 1, ¶ 1.) Plaintiff Payton-Fernandez alleged in the complaint that she was employed by Defendants as an assistant store manager from August 2013 to October 2020 and that she regularly worked in excess of forty hours per week without receiving overtime compensation. (*Id.* at pp. 3, 5, ¶¶ 9, 21.) Plaintiff Payton-Fernandez further alleged in the complaint that she is similarly situated to other current and former employees of Defendants who purportedly held comparable positions with different titles and who also worked more than forty hours in a work week. (*Id.* at p. 1, ¶ 1.)

On April 8, 2022, Defendants filed a motion to compel arbitration. In the motion, Defendants argued that Plaintiff Payton-Fernandez "cannot proceed in this Court because she previously agreed to submit any disputes relating to her employment with Burlington to arbitration as the exclusive forum for adjudicating those claims" and that she "further agreed to arbitrate any claims on an individual basis and waived her ability to bring such claims as a collective action." (Br. in Supp. of Defs.' Rule 12 Mot. to Compel Arbitration and Stay the

Case [D.I. 10-1], p. 1.) On the same date, Plaintiff Payton-Fernandez filed a Notice of Filing of Consent Forms naming Plaintiffs Coleman and Williams as opt-in plaintiffs in the case. (Notice of Filing of Consent Forms [D.I. 11], Apr. 8, 2022.) Also on that date, Plaintiff Payton-Fernandez moved for an order conditionally certifying the case as a collective action and authorizing Plaintiffs to send notice pursuant to 29 U.S.C. § 216(b) to members of the putative collective. (Notice of Pls.' Mot. for Notice and Conditional Certification [D.I. 12].) On April 14, 2022, defense counsel submitted a letter on behalf of all parties requesting a stay of the deadlines and pending motions in this matter so that the parties could engage in private mediation. (Letter from August W. Heckman III, Esq. [D.I. 13], Apr. 14, 2022.)

The Court conducted a telephonic conference on July 12, 2022, at which time the Court granted the parties' joint request for a thirty-day stay of proceedings pending private mediation. (Order [D.I. 22], July 12, 2022, p. 1.) In addition, the Court administratively terminated the motion to compel arbitration and the motion for conditional certification, with the right to re-file such motions upon letter application. (*Id.* at pp. 1-2.) The Court thereafter conducted a telephone conference on September 6, 2022, and the stay was dissolved by Text Order entered on September 7, 2022. (Text Order [D.I. 24],

Sept. 7, 2022.) On September 21, 2022, Plaintiffs filed an unopposed motion to amend the complaint and the instant unopposed motion for settlement approval. The Court granted the motion to amend, and Plaintiffs filed the amended complaint on October 27, 2022. (Order [D.I. 35], Oct. 27, 2022; Am. Compl. [D.I. 36].) The amended complaint defines a nationwide collective consisting of "current and former Assistant Store Managers, and similarly situated current and former employees holding comparable positions but different titles[,] . . . employed by Defendants [] within the United States, who worked more than 40 hours in any given workweek from three years before the date this Complaint was filed until the entry of judgment in this matter . . . and who elect to opt into this action pursuant to 29 U.S.C. §216(b)[.]" (Am. Compl. [D.I. 36], pp. 1-2, ¶ 1.) The amended complaint also adds the opt-in plaintiffs, Coleman and Williams, as named plaintiffs, and includes a cause of action by Plaintiff Coleman pursuant to California's Private Attorneys General Act of 2004 (hereinafter, "PAGA"), Cal. Lab. Code § 2698 *et seq.*, on behalf of herself and as a representative of all aggrieved California members of the collective, for alleged violations of California's Labor Code and Industrial Welfare Commission (hereinafter, "IWC") Wage Orders. (*Id.* at pp. 2, 17-18, ¶¶ 3, 64-73.)

Plaintiffs now seek an order certifying an FLSA collective for settlement purposes and approving a settlement of the FLSA and PAGA claims. Plaintiffs represent that after a full day of mediation, they agreed to settle the case for a maximum settlement amount of $11,000,000. (Decl. of Michael A. Galpern, Esq. in Supp. of Pls.' Unopposed Mot. for Approval of Collective Action Settlement Agreement and Release (hereinafter, "Galpern Decl.") [D.I. 29-3], pp. 7-8, ¶¶ 12-13.) Subject to court approval, Plaintiffs assert that this settlement amount would provide payments to the proposed potential collective, which they contend is comprised of 1,715 individuals, with an average award of $6,414 to each collective member, a $15,000 payment to resolve the PAGA claims,[2] a service award to each of the named plaintiffs in the amount of $10,000, attorneys' fees in the amount of $3,281,556.88, expenses in the amount of $18,443.12, and payment to the settlement administrator in the amount of $32,699. (Mem. of Law in Supp. of Pls.' Unopposed Mot. for Approval of Collective Action Settlement Agreement and Release (hereinafter, "Pls.' Br.") [D.I. 29-2], p. 24; Galpern Decl. at pp. 8-10, 15, ¶¶ 13, 14, 17, 25.) In addition, pursuant to the settlement terms, checks would be mailed to every potential

---

[2] Of this $15,000 sum, the proposed settlement allocates $11,250 to the California Labor and Workforce Development Agency (hereinafter, "LWDA") and $3,750 to the collective members from California. (Galpern Decl., pp. 8-9, ¶ 13.)

collective member with notice that if the checks are cashed or deposited, the collective members would be releasing their FLSA claims against Defendants. (*Id.* at p. 8, ¶ 13.)[3]

      "'The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). Employers may be liable to affected employees for violating the FLSA's overtime provisions "'in the

---

[3] Specifically, the proposed notice to the putative collective members provides:

> [B]y cashing or depositing your check, you will release — through the date you cash and/or deposit the check and as a result join the lawsuit — any and all wage and hour claims, rights, and causes of action, whether known or unknown, under any federal, state, or local wage and hour law, including but not limited to the Fair Labor Standards Act, including without limitation statutory, constitutional, contractual, and common law claims for wages, damages, penalties, attorneys' fees, restitution, or equitable relief to the extent relating to or deriving from a wage and hour claim (including claims for overtime wages or any other wages) relating to employment at Burlington . . . and each of Burlington's current, former, and future affiliates, investors, parents, subsidiaries, related entities, predecessors, successors, divisions, joint ventures and assigns, and each of their respective past or present directors, officers, employees, partners, members, contractors, sub-contractors, employee benefit plan administrators and fiduciaries, trustees, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and corporate capacities[.]

(Galpern Decl., Ex. A, p. 23.)

amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.'" *Id.* (quoting 29 U.S.C. § 216(b)). Because this settlement addresses Plaintiffs' claim for an alleged violation of the FLSA, the settlement requires court approval. *Joseph v. Caesar's Ent. Corp.*, No. 10-6293, 2012 WL 12898816, at *2 (D.N.J. July 23, 2012) ("Under the FLSA, parties must present a proposed settlement to the district court for review and a determination of whether the settlement is fair and reasonable.") (citing *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905, 09-1248, 09-4587, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982)). The Court, in considering whether to approve an FLSA settlement, engages in a three-part analysis:

> First, the court must determine that the settlement concerns a bona fide dispute. Second, the court must determine that the settlement is fair and reasonable to the Plaintiff-employee. And, third, the court must determine that the agreement does not frustrate the implementation of the FLSA in the workplace.

*Gabrielyan v. S.O. Rose Apartments LLC*, No. 15-1771, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015).

The Court rejects the proposed settlement at this time for several reasons. First, Plaintiffs request certification without any analysis as to whether the putative collective

members are similarly situated. Moreover, the named plaintiffs seek to settle claims for putative plaintiffs who have not yet opted into this case. In addition, the Court rejects the proposed process of allowing putative collective members to opt in by cashing a settlement check. The Court also is unable to determine the reasonableness of the attorneys' fee award. The Court addresses each of these issues in turn.

29 U.S.C. § 216(b) "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA." *Genesis Healthcare*, 569 U.S. at 69 (quoting 29 U.S.C. § 216(b)). "When a named plaintiff files a complaint containing FLSA collective action allegations, the mere presence of the allegations does not automatically give rise to the kind of aggregate litigation provided for in Rule 23." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). "Rather, the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs." *Id.* To be included in a collective action, plaintiffs must give written consent to participate. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). "A collective action is more accurately described as a kind of mass

9

action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases — capitalizing on efficiencies of scale, but without necessarily permitting a specific, named representative to control the litigation, except as the workers may separately so agree." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018); *see also Fischer v. Fed. Express Corp.*, 42 F.4th 366, 380 (3d Cir. 2022) (quoting *Campbell*, 903 F.3d at 1105), *cert. denied*, 143 S. Ct. 1001 (U.S. Mar. 6, 2023).

To facilitate a collective action in FLSA cases, "[c]ourts in [the Third] Circuit follow a two-step process[.]" *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). "[A]t the first step, the court makes a preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Id.* (quoting *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 & n.4 (3d Cir. 2012)). The "'modest factual showing' standard" at this first step requires "'a plaintiff [to] produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [the named plaintiff] and the manner in which it affected other employees.'" *Zavala*, 691 F.3d at 536 n.4 (quoting *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, *Genesis*

*Healthcare*, 569 U.S. at 69.). "Being similarly situated does not mean simply sharing a common status . . . [but] means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* at 538. "If the plaintiffs have satisfied their burden, the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi*, 729 F.3d at 243 (quoting *Zavala*, 691 F.3d at 536). When a court grants conditional certification, "[t]he 'sole consequence' . . . is the dissemination of court-approved notice to potential collective action members." *Halle*, 842 F.3d at 224 (quoting *Genesis Healthcare*, 569 U.S. at 75). "At the second stage, with the benefit of discovery, 'a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.'" *Camesi*, 729 F.3d at 243 (quoting *Symczyk*, 656 F.3d at 193). "[P]laintiffs must satisfy their burden at this second stage by a preponderance of the evidence." *Zavala*, 691 F.3d at 537.

In this case, Plaintiff Payton-Fernandez filed a motion for conditional certification on April 8, 2022, but the parties thereafter requested a stay of all pending motions while they participated in mediation. (Letter from August W. Heckman

III, Esq. [D.I. 13], Apr. 14, 2022.) The motion for conditional certification was therefore administratively terminated (Order [D.I. 22], July 12, 2022), and at this time the collective has not been conditionally certified. Consequently, court-directed notice of this action has not yet been provided to potential opt-in plaintiffs. [4] Plaintiffs now ask the Court to simultaneously certify the collective action, [5] approve the settlement, and provide notice of the settlement to the potential opt-in plaintiffs after the approval.

The Court turns first to Plaintiffs' request for certification of the litigation as a collective action for purposes of settlement while at the same time seeking approval of the settlement. Since the parties request approval of a settlement which would resolve "collective action claims under the FLSA, the [c]ourt must certify the FLSA class before addressing the terms of the settlement." *Davis v. Essex Cnty.*,

---

[4] As noted above, two individuals opted into the case and were subsequently added as named plaintiffs in the first amended complaint.

[5] Plaintiffs seek through the instant motion final certification of the collective. The proposed form of order submitted with this motion states that "that the proposed FLSA Collective is certified under 28 U.S.C. 216(b)." (Proposed Order [D.I. 29-1], p. 2.) However, the Court notes that Plaintiffs state in their Notice of Motion that they are seeking an order "*conditionally* certifying the proposed FLSA Collective, for settlement purposes only, under 28 U.S.C. 216(b)[.]" (Notice of Pls.' Unopposed Mot. for Approval of Collective Action Settlement Agreement and Release [D.I. 29], p. 2)(emphasis supplied).

No. 14-1122, 2015 WL 7761062, at *3 (D.N.J. Dec. 1, 2015)(citations omitted); *Bredbenner*, 2011 WL 1344745, at *16 (after granting conditional certification, court noted that it "must [] reach a final determination as to the FLSA class before addressing the terms of the settlement"); *see also Chen v. Genesco, Inc.*, No. 18-0690, 2018 WL 11449302, at *2, *4 (S.D. Ind. Dec. 20, 2018)(denying motion for settlement approval prior to conditional or final certification, noting that court must make "some finding that the plaintiffs are similarly situated" and plaintiff failed to demonstrate that proposed collective members were similarly situated). Indeed, as set forth above, Section 216 provides that a collective action may only proceed "by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated*." 29 U.S.C. § 216(b)(emphasis supplied); *cf. Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) ("One of the principal conditions to proceeding collectively under § 216(b) is that the named plaintiffs be 'similarly situated' to the opt-in 'party plaintiff[s].'")(quoting 29 U.S.C. § 216(b)). This Court, therefore, must find that other employees in the collective action are similarly situated to the named plaintiffs before approving a settlement on behalf of the collective.

While Plaintiffs here request certification of the action as a collective action, they do not argue in the present

motion whether other employees are "similarly situated" under the final certification standard.[6] Although Plaintiffs addressed the standard for conditional certification in a prior motion, that motion was neither fully briefed nor decided as the parties requested a stay with respect to the motion while they pursued mediation. Plaintiffs never subsequently requested that the motion for conditional certification be reactivated. Moreover, the memorandum submitted by Plaintiffs in connection with the present motion is devoted solely to addressing the reasonableness of the settlement and is devoid of any argument to support certification. As such, the Court cannot grant collective action certification based on the record at this time.[7]

---

[6] The Third Circuit has recently noted in dicta that "[t]he FLSA does not mandate courts take any action to certify a collective action" but did not expressly hold that a court may approve a settlement of an FLSA collective without having granted final certification of the collective action. *See Fischer*, 42 F.4th at 376.

[7] Plaintiffs note that this case is substantially related to another case previously litigated in this Court, *Goodman v. Burlington Coat Factory Warehouse Corp.*, Civil No. 11-4395. (*See* Pls.' Br. at p. 1.) In the *Goodman* case, the District Court conditionally certified a collective action consisting of "current and former operations managers, customer service logistics managers, and merchandise managers employed by [Burlington] at any time from July 28, 2008 to the entry of judgment in [the *Goodman*] case." (Op. [D.I. 114 in Civil No. 11-4395], Nov. 20, 2012, p. 1; Order [D.I. 115 in Civil No. 11-4395], Nov. 20, 2012, p. 1.) The District Court thereafter granted final certification with respect to those employees who opted into the litigation. (Order [D.I. 451 in Civil No. 11-

Even if the proposed collective satisfies the "similarly situated" requirement of Section 216(b), the Court finds several procedural problems with the proposed protocol that preclude the Court from approving the settlement. The Court rejects the protocol proposed by the parties because the protocol operates like a class action and is inconsistent with the opt-in process required for an FLSA collective action. In a Rule 23 class action, the class, "once certified, is directed by the named plaintiff and class counsel, representing the absent class members, under the supervision of the court." *Fischer*, 42 F.4th at 380. The named plaintiff may enter into a settlement on behalf of absent class members, subject to court approval, which consists of a two-step approval process in which a court (1) preliminarily approves a proposed class action settlement, and (2) reviews the fairness of the settlement at a final fairness hearing. *See, e.g., Smith v. Merck & Co., Inc.*, No. 13-2970, 2019 WL 3281609, at *4 (D.N.J. July 19, 2019)("Review of a proposed class action settlement is a two-step process: (1) preliminary approval[,] and (2) a subsequent fairness hearing.")(internal quotation omitted). The two-step process is required for a class action settlement because a settlement

---

4395], Nov. 20, 2019.) Plaintiffs must nonetheless demonstrate in this case that members of the collective are similarly situated in accordance with Section 216 and may not merely rely on the prior finding in *Goodman*.

15

under Rule 23 binds all class members, and the court therefore must act "as a fiduciary, guarding the claims and rights of the absent class members." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010).

By contrast, in an FLSA action, "'each [] claimant has the right to be present in court to advance his or her own claim.'" *Fischer*, 42 F.4th at 377 (quoting 7B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1807 (3d ed. 2016)). Accordingly, a named plaintiff in an FLSA collective action has no authority to settle a case for employees who have not opted into the case and authorized a named plaintiff or plaintiff's counsel to act on their behalf. *See Campbell*, 903 F.3d at 1108 (noting that "if the members of a collective reach their own agreement to delegate litigation duties, such an agreement marks a deviation from the statute's default assumption of coequal status"); *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 279 (E.D.N.Y. 2020)("As a general matter, once a Rule 23 class is certified, unless the employee 'opts out,' as a class member he may be bound by actions taken by the class representative, including a settlement of the case. 'A collective action, on the other hand, is not a comparable form of representative action. Just the opposite: Congress added the FLSA's opt-in requirement with the express purpose of 'banning' such actions under the

16

FLSA.'")(internal citations omitted); *cf. Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1248-49 (11th Cir. 2003)(noting that the FLSA prohibits "what precisely is advanced under Rule 23 — a representative plaintiff filing an action that potentially may generate liability in favor of uninvolved class members" and that a plaintiff in an FLSA collective action "has no right to represent" similarly-situated individuals). "The 'opt-in' plaintiff may choose to ride on the coattails of the original plaintiff or be represented by the counsel for the original plaintiffs, but he or she is not obligated to do so." *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1115 (D. Colo. 2017).

Because a named plaintiff has no authority to act on behalf of putative FLSA collective members who have not opted into the litigation and expressly delegated such authority, many courts have rejected a settlement method similar to that requested in this case. For example, in *Collins v. DKL Ventures, LLC,* No. 16-0070, 2017 WL 11569553, at *2 (D. Colo. July 19, 2017), the named plaintiff reached a settlement of FLSA claims brought on behalf of herself and her fellow employees before she provided notice of the litigation to other employees and obtained opt-in notices from such employees to join the action. The court in *Collins* noted that "[t]hose steps *must* be accomplished before any settlement of the FLSA claim can be

negotiated, because every FLSA plaintiff who opts in enjoys an
*individual* right to negotiate and compromise (or to choose to
press) his or her claim." *Id.* (citing *Oldershaw*, 255 F. Supp. 3d
at 1115). The *Collins* court further noted that "[i]n attempting
to negotiate the settlement first, then foist it upon the
(future) opt-in FLSA plaintiffs, [the plaintiff] is attempting
to squeeze the unique form of the FLSA collective action into
the mold of the Rule 23 class action[.]" *Id.; see also Inman v.
Tap Btown, Inc.*, No. 22-01639, 2023 WL 2529340, at *2 (S.D. Ind.
Feb. 17, 2023)(noting that parties requested "unusual step" of
seeking final certification and settlement approval prior to
conditional certification because "a named plaintiff has no
authority to settle claims for plaintiffs who have not opted-
in")(internal quotation omitted); *Oates v. Kinder Morgan Energy
Partners, L.P.*, No. 19-1171, 2022 WL 18673322, at *3 (W.D. Okla.
Jan. 18, 2022)(denying motion to approve settlement, noting that
"[t]o proceed with the settlement, the parties should refile
their motion requesting conditional certification and approval
of the proposed notice to putative class members"),
*reconsideration denied*, No. 19-1171, 2023 WL 1954661 (W.D. Okla.
Jan. 25, 2023); *Christeson v. Amazon.com.ksdc, LLC*, No. 18-2043,
2019 WL 354956, at *4 (D. Kan. Jan. 29, 2019)("When putative
class members have not yet received notice of the lawsuit and an
opportunity to opt in, the Court cannot sustain a motion for

final settlement approval."); *Prim v. Ensign U.S. Drilling, Inc.*, No. 15-02156, 2018 WL 3729515, at *2 (D. Colo. Aug. 3, 2018)(noting that "plaintiff's failure to provide putative class members with notice and an opportunity to opt in to the lawsuit before seeking final approval of the parties' proposed settlement undermines the Court's ability to evaluate the appropriateness of final certification, the fairness of the settlement agreement, and the reasonableness of the fee award agreed upon by the parties" and that "a named plaintiff is not authorized to settle claims on behalf of putative class members who have not yet opted in to the lawsuit"); *Copeland-Stewart v. New York Life Ins. Co.*, No. 15-159, 2016 WL 231237, at *2 (M.D. Fla. Jan. 19, 2016) ("[B]efore the future opt-in plaintiffs actually opt into this action, [plaintiff] has neither the authority to represent the future opt-in plaintiffs nor the authority to settle their FLSA claims."); *Leigh v. Bottling Grp., LLC,* No. 10-0218, 2011 WL 1231161, at *2 (D. Md. Mar. 29, 2011) (where parties asked court "to approve the settlement, certify the class of putative plaintiffs, and facilitate notice to the class members of their rights to opt-in to the settlement at the same time[,]" court declined to approve proposed settlement); *Perez v. Avatar Props., Inc.*, No. 07-792, 2008 WL 4853642, at *3 (M.D. Fla. Nov. 6, 2008)("Approving a global settlement with just the involvement of one plaintiff and *then*

giving notice and an opportunity to opt in to an already settled matter, undercuts this critical distinction [between Rule 23 class actions and FLSA collective actions] and the reasons justifying the distinction in the first place. Simply put: because Plaintiff has no independent right to represent others that have yet to appear, Plaintiff has no authority to settle their as yet unasserted claims.").

Other courts have refused to endorse a settlement approval method similar to that requested here on the ground that cashing a settlement check does not constitute written consent to opt into an FLSA collective action as required by 29 U.S.C. § 216(b). In *Smothers v. NorthStar Alarm Servs., LLC*, No. 17-00548, 2019 WL 280294, at *11 (E.D. Cal. Jan. 22, 2019), the court analyzed whether a check-cashing method of joining an FLSA collective action complied with the requirement of Section 216(b) that an employee "consent in writing to become such a party . . . filed in the court in which such action is brought." 29 U.S.C. § 216(b). Even though the proposed settlement procedure required the filing of a declaration at the conclusion of the check-cashing period which would list the names of all employees who signed, deposited, and/or cashed their settlement checks, the court in *Smothers* rejected the process proposed by the parties, noting that the filing of a declaration naming those who cashed settlement checks did not constitute written

consent sufficient to satisfy the plain language of the FLSA.[8] *Id.; see also Aboah v. Fairfield Healthcare Servs., Inc.*, No. 20-00763, 2021 WL 6337748, at *7 (D. Conn. Jan. 12, 2021) (finding that consent to settlement and release of FLSA claims by cashing checks "violates Section 216(b), which requires each member of the collective to opt in to a FLSA collective by filing a statement on the docket so indicating"); *Villar v. AHRC Home Care Servs., Inc.,* No. 18-9174, 2020 WL 4904031, at *3 (S.D.N.Y. Aug. 20, 2020)(denying settlement approval, noting that "the Settlement Agreement[] provides that check cashing serves as an employee's consent to become part of a collective, which is insufficient written consent" and "the Settlement Agreement has no provision for requiring filing employees' consents on the docket, but improperly allows the check endorsement to serve as consent to join[]"); *O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 19-02378, 2020 WL 4493157, at *10 (W.D. Tenn. Aug. 4, 2020)("Even if the First Amended Settlement Agreement expressly provided that the Settlement Administrator would file with the Court a list of all members who cashed their checks, that method would be deficient, because

---

[8] The settlement agreement in this case contains a similar provision. (Galpern Decl., Ex. A [D.I. 29-4], at pp. 6-7, ¶ 5(l))(defense counsel will "file with the Court redacted versions of the cashed or endorsed checks along with a declaration listing the names of all Participating Collective Members who have cashed and/or deposited their checks and thus released their Released Claims").

it would not comply with the plain language of § 216(b): it would not be the written consent of each individual Opt-In Plaintiff filed with the Court."); *Beltran v. Olam Spices & Vegetables, Inc.,* No. 18-01676, 2020 WL 2850211, at *13 (E.D. Cal. June 2, 2020)("The procedure proposed here, having FLSA members opt-in to the collective action by signing the back of their settlement check, does not comply with the requirements of the FLSA.").

Following the reasoning of the cases cited *supra*, the Court concludes that at this time Plaintiffs have neither the authority to represent future opt-in plaintiffs nor the authority to settle the FLSA claims on behalf of such potential plaintiffs. In addition, the Court finds that future opt-in plaintiffs cannot consent to be party plaintiffs pursuant to Section 216(b) by cashing a settlement check. "The FLSA leaves no doubt that 'every plaintiff who opts in to a collective action has party status.'" *Campbell*, 903 F.3d at 1104 (quoting *Halle*, 842 F.3d at 225). While "Rule 23 allows for representative actions in which class members' interests are litigated by the named plaintiff[,]" a collective action "is not a comparable form of representative action." *Id.* at 1105. "[O]pt-in plaintiffs [] choose whether and when to 'become parties to a collective action only by filing a written consent with the court.'" *Id.* (quoting *Genesis Healthcare*, 569 U.S. at

75). Because the process proposed by the parties does not comport with these principles, the motion to approve the settlement is denied without prejudice.[9]

In so finding, the Court notes Plaintiffs' assertion that a "one-step settlement" process is "routinely approved by courts[,]" including some courts in this Circuit. (*See* Pls.' Supp. Letter at p. 1.) In a supplemental letter brief, Plaintiffs cited a number of cases in which courts have approved FLSA collective action settlements using a "one-step approval

---

[9] Other courts have rejected a settlement protocol similar to that requested here for the additional reason that a court cannot dismiss with prejudice the claims of collective action members who have not yet appeared in the case. As noted in *Douglas v. Allied Universal Sec. Servs.*, 381 F. Supp. 3d 239, 243 (E.D.N.Y. 2019), the "process of adjudicating FLSA claims of individuals not before the Court — outside of a class action — without giving them an opportunity to be heard may not offend due process, but it certainly comes close." Dismissal of the claims with prejudice upon settlement approval, prior to an employee's appearance in the case, "means that an employee has no opportunity whatsoever to come before the Court, to object or otherwise be heard, or for the Court to hear from the employee should the need arise." *Id.; see also Lopez v. Silfex, Inc.*, No. 21-61, 2021 WL 5795280, at *11 (S.D. Ohio Dec. 3, 2021)("[I]f the case were to be dismissed at this point, then the prospective opt-in plaintiffs would be unable to properly file their written consents to become parties to this action (and therefore could not be bound by or benefit from the results of the litigation)."); *O'Bryant*, 2020 WL 4493157, at *11 ("The parties ask the Court to approve the settlement on behalf of individuals who are not before the Court and to dismiss their claims with prejudice before they have appeared or had the opportunity to be heard. That is not an 'orderly, sensible,' or 'proper way' to resolve this case.")(internal citation omitted). This Court rejects the proposed settlement for this reason as well.

process." [10] However, the term is utilized in such cases in a variety of procedural contexts. In some of the cases cited by Plaintiffs, for example, courts referred to a "one-step settlement approval process" whereby they approved an FLSA settlement without ever certifying the collective action. [11] In

---

[10] Some of the decisions cited by Plaintiffs are not available on Westlaw or Lexis, and Plaintiffs failed to attach copies of these decisions to their supplemental brief. The Court, nonetheless, has accessed these decisions through PACER, the United States Courts' public access to electronic records, and may take judicial notice of prior judicial opinions and the dockets of the cases cited by Plaintiffs, as they are matters of public record. *See* FED. R. EVID. 201(b)("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014)("We may take judicial notice of the contents of another Court's docket.").

[11] *See, e.g.*, *Prena v. BMO Fin. Corp.*, No. 14-09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015)(finding that a two-step process was not necessary in the FLSA collective action context, stating that "[o]ne step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)" and "[t]here is no other reason unique to this case that prompts the need for a two-step process (for example, two steps might be needed if the one-step process would be unduly influential in causing members to opt-in without considering all of the risks and the benefits are very low; in other words, a concern that the reasonableness of the settlement is a close question)"); *Pieber v. SVS Vision, Inc.*, No. 20-13051, 2022 WL 687248, at *3 (E.D. Mich. Mar. 8, 2022)("The one-step approval process requested is appropriate because it satisfies all procedural and substantive prerequisites for approval of an FLSA collective action."); *Ceniceros v. Pactiv, LLC*, No. 18-1759, 2019 WL 13252838, at *2 (N.D. Ill. Jan. 17, 2019)("A one-step settlement approval process is appropriate."); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-10219, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017)("A one-step approval

other cases cited by Plaintiffs which employed a "one-step settlement approval process," courts conditionally certified the FLSA collective action before the parties reached a settlement, and the settlement was then approved without final certification of the collective action.[12] In still other cases cited by

---

process is appropriate in FLSA settlements that do not include proposed Federal Rule of Civil Procedure 23 class releases."); *Castillo v. Noodles & Co.*, No. 16-03036, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016)("A one-step settlement approval process is appropriate."); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16-3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016)(same); *Besic v. Byline Bank, Inc.*, No. 15-8003, 2015 WL 13763028, at *1 (N.D. Ill. Oct. 26, 2015)(court approved a "one-step process rather than a two-step process used in class action settlements"); *Anwar v. Transp. Sys., Inc.*, No. 13-2666 (S.D.N.Y. Nov. 17, 2014)(court approved settlement without conditional or final certification); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11-00738, 2014 WL 3778211, at *1 (D. Conn. July 31, 2014)(after court denied plaintiff's motion for conditional certification without prejudice to re-filing after further discovery, parties settled and court approved settlement without certifying collective action); *Roberts v. Apple Sauce, Inc.*, No. 12-830, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014)(after court denied motion for conditional certification and only one named plaintiff and one opt-in plaintiff settled claims, court approved settlement only on behalf of two plaintiffs and did not address certification of collective).

[12] *See, e.g.*, *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016)(docket reflects that after granting conditional certification and numerous individuals opted into case, parties entered into a settlement on behalf of both opt-in plaintiffs and individuals who had not previously filed consent to join litigation, and court thereafter concluded that "[a] one-step settlement approval process is appropriate"); *Blum v. Merrill Lynch & Co., Inc.*, No. 15-1636, 2016 WL 11087014, at *1 (S.D.N.Y. May 6, 2016)(after court granted conditional certification but before notice was issued to potential opt-in members, court approved settlement on behalf of named plaintiffs and potential opt-in plaintiffs); *Dixon v. Zabka*, No. 11-982, 2013 WL 2391473, at *1 (D. Conn. May

Plaintiffs, courts dispensed with the conditional certification process but granted final certification while approving the settlement.[13] A "one-step settlement approval" could also refer

---

23, 2013) (court granted plaintiffs' motion for conditional certification and thereafter approved settlement on behalf of named plaintiffs and opt-in plaintiffs without granting final certification); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09-01430, 2012 WL 1424417, at *1 (S.D. Ind. Apr. 24, 2012)(after court granted conditional certification, notice was issued, and opt-in parties joined in case, court approved settlement on behalf of named and opt-in plaintiffs without granting final certification); *Aros v. United Rentals, Inc.*, No. 10-73, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012)(court approved settlement, without granting final certification, after collective was conditionally certified, notice was issued to putative opt-in plaintiffs, opt-in plaintiffs joined case, and case was settled on behalf of opt-in plaintiffs); *Raymer v. Mollenhauer*, No. 10-210, 2011 WL 338825, at *1 (N.D. Ind. Jan. 31, 2011)(after court granted conditional certification and notice was issued but no opt-in consents were filed, court approved settlement on behalf of named plaintiffs and potential opt-in plaintiffs without granting final certification).

[13] In *Benoskie v. Kerry Foods Inc.*, No. 19-684, 2020 WL 5769488, at *1 (E.D. Wisc. Sept. 28, 2020), the court expressly considered whether it "has the authority to skip the conditional certification step and grant final certification of the collective class." The parties in *Benoskie* simultaneously sought final certification of an FLSA collective and approval of a settlement, without ever having sought conditional certification. *Id.* The court in *Benoskie* noted that "[t]he majority of courts in this circuit follow a two-step process to determine whether an FLSA lawsuit should proceed as a collective action[,]" first making a conditional certification determination and thereafter making a final certification decision. *Id.* The court in *Benoskie* further noted that "[s]ome judges in the Northern District of Illinois, however, have approved FLSA settlements using a one-step approval process." *Id.* Citing *Briggs*, the court in *Benoskie* concluded "that a one-step certification process is appropriate[,]" proceeded to final certification of the FLSA collective, and approved the settlement. *Id.* at *2. Similarly, in *Risbrook v. Blue Horseshoe Network, LLC,* No. 19-11262, 2020 WL 13441574, at *2, *6 (E.D.

to the consolidation of the traditional two-step settlement approval process of Rule 23 class actions into a single fairness determination, but without bypassing either step of certification of the collective action. Accordingly, while Plaintiffs and many courts refer to a "one-step settlement approval process," the term is used in varied contexts.

Plaintiffs argue that conditional certification is not necessary prior to settlement approval and contend that "there is no reason why that step – which is entirely procedural – would be necessary at all. The statute does not require it."[14] (Pls.' Supp. Letter at pp. 3-4.) Plaintiffs cite several cases from within the Third Circuit in which settlements were approved without conditional and/or final certification, but the Court

---

Mich. Sept. 4, 2020), while the court noted that "[a] one-step settlement approval process in FLSA collective actions is appropriate[,]" the court proceeded to certify the collective for purposes of settlement and then approved a settlement on behalf of the named plaintiff and 44 existing opt-in plaintiffs.

[14] Despite their present assertion that conditional certification is unnecessary, Plaintiffs previously argued in support of their motion for conditional certification that "[n]otice is essential[,]" that "[c]ourt-facilitated notice is necessary in order to prevent the expiration of claims based on the running of the statute of limitations" and that "[c]onditional certification furthers the FLSA's broad remedial purpose and is justified by the court's managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." (Pls.' Br. in Supp. of Mot. for Notice and Conditional Cert. [D.I. 12-1], pp. 2, 13)(internal quotations omitted).

finds Plaintiffs' reliance on such cases unavailing.[15] The only case cited by Plaintiffs from within this Circuit that utilized the specific settlement approval process requested here is *Herbin v. The PNC Fin. Servs. Grp.*, Nos. 19-696, 20-58, 2020 WL 429081, at *1 (W.D. Pa. Jan. 27, 2020). However, the court in *Herbin*, while acknowledging the distinction between a collective action and a class action for purposes of notice, did not address the differences between the representative role of a named plaintiff in a class action and the role of a named plaintiff in a collective action, nor did the court discuss whether it could approve the settlement of a collective action without a finding that the putative opt-in plaintiffs were similarly situated to the named plaintiff. *See Herbin*, 2020 WL 429081, at *1 n.2. Plaintiff also cited *Fitch v. Giant Eagle, Inc.*, No. 18-01534 (W.D. Pa.), in support of a "one-step settlement approval process." In *Fitch*, the court did not bypass the conditional certification process, as the collective action was conditionally certified by the court prior to settlement, but the named plaintiff then settled the action on behalf of putative collective members before notice was issued to potential opt-in members. In approving the settlement, the *Fitch*

---

[15] The issue of whether a two-step certification process is required is presently before the Sixth Circuit in *In re: A&L Home Care and Training Ctr.,* Sixth Circuit Case No. 21-305 (ECF No. 12).

court did not address whether the named plaintiff had authority to negotiate such a settlement on behalf of putative collective members or whether final certification of the collective action was necessary before settlement approval. Neither *Herbin* nor *Fitch*, therefore, persuades this Court that the protocol proposed by the parties here comports with the FLSA and Third Circuit precedent.

Furthermore, the other cases cited by Plaintiffs from within the Third Circuit do not provide support for Plaintiffs' proposed settlement protocol because the settlements in each of those cases only applied to collective members who had formally opted into the case by filing written consents with the court. For example, in *Cruz v. JMC Holdings, Ltd.*, No. 16-9321, 2019 WL 4745284, at *2 (D.N.J. Sept. 30, 2019), a case cited by Plaintiffs, while the court did not conditionally certify the FLSA collective action, twenty-four individuals filed written consents to become party plaintiffs. The settlement approved by the court in *Cruz* only applied to the named plaintiffs and the twenty-four collective members who had filed consents to opt into the FLSA collective action, and the *Cruz* court certified the collective when approving the settlement.[16] *Id.* at *4.

---

[16] The settlement agreement attached to the parties' motion for settlement approval in *Cruz* stated that the settlement was entered into only on behalf of the named plaintiffs and the twenty-four individuals who filed "Consents to Become a Party

Similarly, while Plaintiffs cite *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at *1 (E.D. Pa. Mar. 7, 2014), in support of their proposed protocol, the settlement approved by the court only applied to the named plaintiffs and those employees who had opted into the case.[17]   Although the court in *In re Chickie's & Pete's* did not engage in a certification process, eighty individuals filed written consents to join the action, and the case was settled only as to those individuals. In *Brumley v. Camin Cargo Control, Inc.*, Nos. 08-1798, 10-2461, 09-6128, 2012 WL 1019337, at *10 (D.N.J. Mar. 26, 2012), another case cited by Plaintiffs, the court prior to settlement approval had conditionally certified the FLSA collective action, notice was issued to potential collective members, and a settlement agreement was reached only on behalf of the 112 individuals who were either named plaintiffs or opt-in plaintiffs. (*See* Consent Order Attaching Collective Action Opt-In Notice and Consent to Sue [D.I. 58 in Civ. No. 08-1798], Oct. 6, 2008; Decl. of Matthew Dunn, Esq. [D.I. 229 in Civ. No.

---

Plaintiff form" and were identified on an exhibit to the settlement agreement. (*See* Consent Motion for Settlement by All Plaintiffs [D.I. 34 in Civ. No. 16-9321], Ex. A.)

[17] Specifically, the settlement agreement in *In re Chickie's and Pete's* expressly identified the ninety-one named plaintiffs and opt-in plaintiffs and defined "Plaintiffs" collectively as the named plaintiffs and those who opted into the collective. (*See* Settlement Agreement and Release of Claims, *In re Chickie's and Pete's*, No. 12-6820 (E.D. Pa. Feb. 20, 2014).)

08-1798], Jan. 31, 2012, pp. 3, 5, ¶¶ 6, 10;  Order [D.I. 40 in 10-2461], Sept. 24, 2010.) Plaintiffs also cite *Clarke v. Flik Int'l Corp.*, No. 17-1915, 2020 WL 747067, at *1-2 (D.N.J. Feb. 14, 2020), but again the court in *Clarke* had conditionally certified an FLSA collective action, notice was issued to potential collective members, six individuals opted into the case as party plaintiffs, and a settlement was then negotiated and approved only on behalf of the named plaintiff and the opt-in plaintiffs. Plaintiffs further rely on the decision in *Jones v. SCO, Silver Care Operations LLC*, No. 13-7910, 2019 WL 2022371, at *1 n.1 (D.N.J. May 8, 2019), but the court in *Jones* also had granted conditional certification, several employees filed consent forms to opt into the case, and the court approved a settlement that concerned only the named plaintiffs and five opt-in plaintiffs. Thus, while these cases did not utilize a two-step certification process prior to settlement approval, none of these cases endorses the protocol requested by Plaintiffs here in which a named plaintiff may negotiate an FLSA settlement on behalf of individuals who have not filed written consent to join the case.

In summary, despite the cases cited by Plaintiffs that utilize some form of a "one-step settlement approval process," these cases do not address the concerns raised by this Court. The Third Circuit has expressly noted that "from start to

31

finish, FLSA collective actions are materially different from Rule 23 class actions with regard to the representative nature of the suits." *Fischer*, 42 F.4th at 377. "A plaintiff seeking FLSA collective action certification does not have a procedural right to represent a class in the absence of any opt-in plaintiffs." *Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1122 (9th Cir. 2009). An FLSA plaintiff's "right to represent a class depends entirely on whether other plaintiffs have opted in." *Id.* at 1123. Because other employees have not yet opted into this FLSA collective action, Plaintiffs have no authority to act as representatives of these potential collective members and settle the case on their behalf at this time.

Furthermore, the Court is presently unable to assess the reasonableness of the attorneys' fees sought by Plaintiffs because the actual value of the settlement cannot be determined until the Court knows how many employees will opt into this litigation. Section 216(b) authorizes the payment to a plaintiff's counsel of "a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b). Plaintiffs argue that the "percentage of recovery" method should be used to assess the reasonableness of the proposed attorneys' fee. (*See* Pls.' Br. at pp. 23-25.) "Under the percentage-of-recovery approach, the Court must determine whether the percentage of total recovery that the proposed award would allocate to attorneys fees is

appropriate 'based on the circumstances of the case.'" *Bredbenner*, 2011 WL 1344745, at *19 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001)). In class action and collective action cases, the Third Circuit has set forth several factors a court should utilize in determining whether an award based on the percentage of recovery is appropriate:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (citations omitted). This list is not exhaustive, and courts may also consider any other factors that are "useful and relevant" under the facts of each case. *Bredbenner*, 2011 WL 1344745, at *19 (quoting *In re AT&T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006)). Courts in the Third Circuit typically use a percentage-of recovery method to assess attorneys' fees where a common fund is established. *Gelis v. BMW of N. Am., LLC*, 49 F.4th 371, 379 (3d Cir. 2022).

Here, the Court cannot evaluate the first *Gunter* factor without knowing how many individuals will actually opt into the collective and how many will decline to accept the

33

settlement amount. The attorneys' fee sought by Plaintiffs is approximately thirty percent of the maximum settlement amount, but the settlement agreement contains a reversionary provision by which any unclaimed portion of the maximum settlement amount will revert back to Defendants. (*See* Galpern Decl., Ex. A at p. 7, ¶ 6)("All funds remaining from any uncashed Settlement Checks . . . shall be returned to Burlington by the Settlement Administrator."). Therefore, depending on the number of potential collective members who choose to opt into the case, the total recovery to Plaintiffs may be significantly lower than the $11 million maximum settlement amount, thereby impacting a determination of the reasonableness of percentage of the fee to be paid to Plaintiffs' counsel.[18]  *See Oates*, 2022 WL 18673322, at *5 (where settlement agreement provided that unclaimed settlement funds would revert to defendant, court noted that "size of the unclaimed portion of the funds could impact the reasonableness of the requested fee award"); *Prim*, 2018 WL 3729515, at *2 ("If the unclaimed portion is large, the total actual recovery of the plaintiff class will be significantly lower than the projected net settlement amount, potentially

---

[18] In the *Goodman* case previously litigated in this Court, of the 1,648 potential opt-in plaintiffs, only 580 individuals opted in, and that number decreased to 539 plaintiffs by the end of the litigation. (*See* Galpern Decl., pp. 3-4, ¶¶ 3, 7; Decl. of Seth R. Lesser, Esq. in Supp. of Pls.' Unopposed Mot. for Preliminary Approval of an Order Approving Settlement Notice [D.I. 462-2 in Civil No. 11-4395], p. 3, ¶ 3.)

rendering a [] fee award unreasonable."); *Copeland-Stewart*, 2016 WL 231237, at *3 (where unclaimed settlement funds would revert to defendant under proposed settlement protocol, court noted that "[i]f a large portion of the $725,000 reverts to [the defendant], a $322,500 attorney's fee award would be unreasonable"); *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660, 2011 WL 32436, at *5 (D. Kan. Jan. 5, 2011) (finding that "the record does not contain information sufficient for the Court to determine whether the amount of proposed attorney's fees is reasonable" because "the proposed settlement provides a possibility that some of the common fund could revert back to defendant [and] the Court cannot determine a reasonable attorney's fee based on a percentage of the common fund until after the time for reversion has expired").[19] Consequently, until the potential opt-in plaintiffs have an opportunity to opt in,

---

[19]   In *Lauture*, a case cited by Plaintiffs, while the court generally approved of a settlement protocol similar to that sought herein, the court reserved decision on the attorneys' fees until the claims administration process was finalized and the parties advised the court of how many eligible settlement members actually opted into the settlement and the percentage of the settlement amount that the eligible collective members claimed. *Lauture*, 2017 WL 6460244, at *4. The court in *Besic*, also a case cited by Plaintiffs, similarly reserved decision on the attorneys' fee award until the claims process was concluded, noting that the court "may consider the level of actual recovery to the class as compared to the requested fee award when deciding whether to use the fund or lodestar approach to calculating fees." *Besic*, 2015 WL 13763028, at *2-3.

the Court cannot make a determination regarding the reasonableness of the proposed attorneys' fee.

Finally, even if the Court had the ability to evaluate the settlement at this time, the Court finds several additional issues that must be resolved before the Court can approve any proposed settlement.[20] First, Plaintiffs seek a service award payment of $10,000 per named plaintiff, but they have made no factual showing to demonstrate the reasonableness of such an award. (*See* Pls.' Br. at pp. 32-33.) They contend generally that these named plaintiffs provided "valuable information," made themselves available for consultation, and took on the risk of retaliation by their employer, but Plaintiffs provide no specific information for the Court to assess the extent of the named plaintiffs' contributions to the litigation, such as whether they provided documents, provided assistance contacting putative collective members, sat for depositions, or participated in the mediation session. (*See id.*) In light of Plaintiffs' representations concerning the extent to which the *Goodman* case was litigated and the information gathered through that litigation, the current named plaintiffs may have had limited involvement in this litigation. (*See id.* at p. 3.) Second, the proposed notice to the potential opt-in plaintiffs

---

[20] This discussion is not intended to be an exhaustive evaluation of the Settlement Agreement.

provides a general formula for calculating the amount to be paid
to the plaintiffs but fails to provide notice of the specific
amount of the attorneys' fee award and expenses to be paid to
Plaintiffs' counsel, the amount of the service awards to be paid
to the named plaintiffs or the amount of the settlement
administrator's costs. (*See* Galpern Decl., Ex. A.) Any notice to
collective members must explicitly include this information to
constitute sufficient notice to the opt-in plaintiffs. Third,
the Court is concerned by the breadth of the releases to be
provided by the named plaintiffs, as a settlement agreement may
not frustrate the implementation of the FLSA in the workplace.[21]

---

[21] The release in the proposed settlement agreement provides as
follows with respect to the named plaintiffs:

> Payton-Fernandez, Coleman, and Williams will execute a
> separate General Agreement and Release ("General
> Release") covering the Released Parties, in which they
> will release any and all claims and causes of action,
> whether known or unknown, that they may have against
> any and all of the Released Parties (as defined
> herein) from the beginning of time through the date
> the Settlement Agreement is signed. The claims and
> causes of action to be released by Payton-Fernandez,
> Coleman, and Williams in the General Release include,
> but are not limited to, the following: wage and hour
> claims, contract claims; claims for salary, incentive
> payments, benefits, bonuses, restricted stock awards,
> stock options, severance pay, commissions, or vacation
> pay; claims sounding in negligence or tort; fraud
> claims; claims for medical bills; all matters in law,
> in equity, or pursuant to statute, including damages,
> attorneys' fees, costs, and expenses; and, without
> limiting the generality of the foregoing, to all
> claims, including, but not limited to, those arising
> under the Fair Labor Standards Act; Title VII of the

"[D]istrict courts require plaintiffs to limit the scope of any waiver or release clause in FLSA settlement agreements to 'claims related to the specific litigation.'" *Cruz*, 2019 WL 4745284, at *7 (quoting *Singleton v. First Student Mgmt. LLC*, No. 13-1744, 2014 WL 3865853, at *9 (D.N.J. Aug. 6, 2014)). Plaintiffs acknowledge that the release for the named plaintiffs is not limited to wage claims but argue without citation to any authority that the scope of such release is "commonplace in employment cases" and is not improper given that these plaintiffs will receive service awards as part of the settlement. (Pls.' Br. at p. 21.) The parties must either limit the scope of the release or provide the Court with authority for their position that the inclusion of a service award in a settlement agreement entitles the parties to broaden the scope of the release of an FLSA claim. Fourth, the proposed settlement purports to settle the PAGA claims for $10,000, but Plaintiffs

---

Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Americans with Disabilities Act; 42 U.S.C. § 1981; the Age Discrimination in Employment Act (if applicable); the Older Workers' Benefit Protection Act (if applicable); the Employee Retirement Income Security Act; the Genetic Information Nondiscrimination Act; the Family and Medical Leave Act; the wage/hour laws and regulations of any state; and any other federal, state, or local law, statute, or ordinance affecting Payton-Fernandez's, Coleman's, and Williams' employment with Burlington and any interactions with any of the Released Parties.

(Galpern Decl., Ex. A, p. 8, ¶ 8(c).)

provide no information for the Court to assess the reasonableness of this settlement sum, nor have Plaintiffs indicated that notice of the proposed settlement was provided to the California Labor and Workforce Development Agency as required by California law. *See* Cal. Lab. Code § 2699.3(b)(4) ("The superior court shall review and approve any proposed settlement of alleged violations of the provisions of Division 5 . . . to ensure that the settlement provisions are at least as effective as the protections or remedies provided by state and federal law or regulation for the alleged violation. The provisions of the settlement relating to health and safety laws shall be submitted to the division at the same time that they are submitted to the court."); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019)(evaluating proposed settlement of PAGA claim).[22] Lastly, with respect to Plaintiffs' requested attorneys' fee, even if

---

[22] The amended complaint, filed *after* the instant motion for settlement approval, notes that Plaintiff Coleman provided notice of the alleged California Labor Code and IWC Wage Order violations to the LWDA and that "[i]f the LWDA declines to investigate or prosecute, the Plaintiff Coleman will pursue PAGA claims in the course of this action." (Am. Compl. [D.I. 36], p. 18, ¶¶ 70, 72.) Plaintiff Coleman, however, provides no indication that the LWDA declined to investigate or prosecute the asserted California Labor Code and IWC Wage Orders violations within the requisite sixty-day time period or that Plaintiff Coleman waited this time period before engaging in settlement negotiations concerning this claim. *See* Cal. Lab. Code § 2699.3(a)(2)(A). Plaintiff Coleman's efforts to settle such claims at this time, accordingly, appear premature.

the Court utilizes a percentage-of-recovery method to determine the reasonable of the fee, the Court should still perform a "cross-check" using the "lodestar" method. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award. Even when used as a cross-check, courts should 'explain how the application of a multiplier is justified by the facts of a particular case.'" *Id.* at 306 (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 340-41 (3d Cir. 1998)); *see also Gelis*, 49 F.4th at 381 ("[W]e urge the District Court on remand to provide additional reasoning for its decision whether to add a lodestar multiplier."). However, counsel provides insufficient information for the Court to assess the lodestar. Specifically, Plaintiffs' counsel represents that counsel spent 615.30 hours of work and anticipates spending an additional 150 hours to finalize the settlement process, for a combined lodestar of $491,689.00. (Galpern Decl., pp. 11-12, ¶ 20.) The average rate pursuant to this lodestar is $642 per hour, but Plaintiffs have provided no information concerning the reasonableness of this hourly rate.[23] Any future motion should provide more detailed

---

[23] Plaintiffs offered to submit time records upon request but did

information regarding the number of hours spent on the litigation and the reasonable hourly rates of the attorneys and the prevailing market rates in Southern New Jersey for FLSA work.

In summary, the Court denies the motion without prejudice. If the parties seek to settle this suit as a collective action, they must cure the defects in substance and use a procedural mechanism consistent with an FLSA collective action, not a class action. Once potential plaintiffs have been given notice and an opportunity to opt into this suit and the parties thereafter reach a settlement, Plaintiffs may move for final certification and approval of the proposed settlement, specifically addressing the concerns set forth herein.

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this **28th** day of **April 2023**,

**ORDERED** that the motion [D.I. 29] for settlement approval shall be, and is hereby, **DENIED WITHOUT PREJUDICE**.


_s/ Ann Marie Donio_
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

---

not contemporaneously provide such records with the present application. (Galpern Decl., p. 11, ¶ 20.)