[D.I. 47]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

KIM PAYTON-FERNANDEZ, LAVERN
COLEMAN, and DARNIEL WILLIAMS,
individually and on behalf of
all other persons similarly
situated,

        Plaintiffs,

   v.

BURLINGTON STORES, INC., et
al.,

       Defendants.

Civil No. 22-608 (AMD)

**MEMORANDUM OPINION
AND ORDER**

**APPEARANCES**:

Michael A. Galpern, Esq.
Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins
Laurel Oak Corporate Center
1000 Haddonfield-Berlin Road
Suite 203
Voorhees, NJ 08043

Seth Richard Lesser, Esq.
Klafter Lesser LLP
Two International Drive
Suite 350
Rye Brook, NY 10573

    *Counsel for Plaintiffs*

August W. Heckman, III, Esq.
Rudolph J. Burshnic, Esq.
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, NJ 08540-6241

    *Counsel for Defendants*

**<u>DONIO</u>, Magistrate Judge:**

This matter comes before the Court by way of motion [D.I. 47] of Plaintiffs Kim Payton-Fernandez, Lavern Coleman and Darniel Williams, for an order conditionally certifying a collective under 29 U.S.C. § 216(b), authorizing judicial notice of the lawsuit to all putative collective action members, and facilitating notice by requiring Defendants to produce an electronic list of putative collective action members and corresponding contact information. Defendants, Burlington Stores, Inc., Burlington Coat Factory Warehouse Corporation, Burlington Coat Factory Investment Holdings, Inc. and Burlington Coat Factory Holdings, LLC, do not oppose the motion. The Court has considered Plaintiffs' submission and decides this matter pursuant to Federal Rule of Civil Procedure 78(b). For the reasons that follow and for good cause shown, Plaintiffs' motion is granted in part and denied without prejudice in part.

The background of this case is set forth at length in this Court's Opinion and Order dated April 28, 2023 and is incorporated herein by reference. *See Payton-Fernandez v. Burlington Stores, Inc.*, -- F. Supp. 3d ---, No. 22-608, 2023 WL 3145140, at *1 (D.N.J. Apr. 28, 2023). Plaintiffs generally allege that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (hereinafter, "FLSA"), and California wage and hour laws by misclassifying Plaintiffs and other similarly

situated employees as exempt under federal overtime laws and failing to pay them overtime wages. *Id.* Plaintiffs, who are present and former "Assistant Store Managers" (hereinafter, "ASMs") at Defendants' retail stores within the United States, contend that they regularly worked in excess of forty hours per workweek without receiving overtime compensation because Defendants allegedly had a company-wide policy, pattern and/or practice of misclassifying ASMs as exempt from the overtime provisions of the FLSA. (*See generally* Third Am. Compl. [D.I. 36], Oct. 27, 2022.) Plaintiffs further contend that "[t]he primary job duties of Plaintiffs and the members of the Collective did not materially differ from the duties of Defendants' non-exempt hourly paid employees, which included many duties that were manual and non-exempt in nature[,]" but Defendants purportedly classified their ASMs as exempt "to avoid paying additional wages (including overtime) to the non-exempt employees." (*Id.* at pp. 10-11.) Plaintiffs also aver that Defendants willfully underfunded store labor budgets for non-exempt employees to perform their duties and responsibilities, which thereby purportedly forced the ASMs to perform non-exempt tasks without overtime compensation. (*Id.* at p. 13.) Plaintiffs seek on behalf of themselves and other similarly situated employees unpaid wages for all hours worked in excess of forty hours per workweek for which they did not receive overtime

premium pay, as well as liquidated and punitive damages. (*Id.* at p. 19.)

The parties previously participated in private mediation of this matter and reached a settlement, and Plaintiffs thereafter moved to certify an FLSA collective for settlement purposes and approval of the settlement of the FLSA and California state law claims. *See Payton-Fernandez*, 2023 WL 3145140, at *1. This Court, however, denied the motion without prejudice. *Id.* The Court first concluded that Plaintiffs failed to address the applicable standard for certification of the action as a collective action, and the Court was thus unable to conclude that members of the collective are "similarly situated" in accordance with 29 U.S.C. § 216. *Id.* at *4. In addition, because Plaintiffs attempted to settle this action before providing an opportunity for putative collective members to opt into the case, the Court further concluded that "Plaintiffs have no authority to act as representatives of these potential collective members and settle the case on their behalf at this time." *Id.* at *9. The Court noted that "[i]f the parties seek to settle this suit as a collective action, they must cure the defects in substance and use a procedural mechanism consistent with an FLSA collective action, not a class action." *Id.* at *11. Since this Court's decision, three individuals have opted into

Plaintiffs' suit by filing consent forms. (*See* Notice of Filing of Consent Forms [D.I. 51, 52, 53].)

Plaintiffs now seek conditional certification pursuant to 29 U.S.C. § 216(b). Plaintiffs argue that from February 4, 2019 through February 28, 2021, Defendants classified all ASMs as exempt under the FLSA "without regard to the size, sales volume, geographic location or hours of operation of the store where the ASM worked, the length of the ASM's tenure, or the supervisor or manager to whom the ASM reports[,]" and that all ASMs received no overtime compensation for hours worked in excess of forty hours per workweek. (Pls.' Mem. in Supp. of Unopposed Mot. for Notice and Conditional Certification (hereinafter, "Pls.' Br.") [D.I. 48], pp. 7-8.) Plaintiffs ask the Court to conditionally certify a collective action consisting of:

> All Assistant Store Managers ("ASMs") who worked in any of Burlington's stores in the United States at any time between February 4, 2019, and February 28, 2021, except for ASMs who participated in the *Goodman* settlement, for whom the period shall be August 20, 2020 to February 28, 2021 (the "Collective").

(Proposed Order [D.I. 50], p. 1.) Plaintiffs also ask the Court to approve a notice and "Consent to Join Form" and to facilitate notice to putative collective members by requiring Defendants to provide to a third-party administrator an electronic list of all

5

persons employed as ASMs within the collective with corresponding contact information. (*Id.* at p. 2.)

In support of the motion, Plaintiffs provided their own declarations and declarations from two additional ASMs. Plaintiff Payton-Fernandez states in her declaration that she worked as an ASM for Defendants from August 2013 until October 2020 at a retail store in Stratford, Connecticut. (Decl. of Pl. Kim Payton-Fernandez [D.I. 49-2], May 24, 2023, p. 1, ¶ 2.) Plaintiff Payton-Fernandez further states that she routinely worked 55-60 hours per week but was classified as "exempt" during the entirety of her employment and therefore received no overtime compensation for the hours worked above forty hours per week. (*Id.* at p. 1, ¶¶ 3-4.) Despite her classification as exempt, Plaintiff Payton-Fernandez represents that she spent "more than 80% of [her] time" stocking shelves, folding and hanging clothing, taking out garbage, working the cash register, building displays, cleaning, unloading trucks, helping customers, and moving products to the sales floor, which duties she characterizes as "non-exempt" work. (*Id.* at pp. 1-2, ¶ 5.) This work, Plaintiff Payton-Fernandez represents, "was the same work performed by the hourly employees," but Plaintiff Payton-Fernandez was required to perform the same duties "because there simply were not enough employees working in the store to get the work done." (*Id.* at p. 2, ¶¶, 5, 7.) Further, Plaintiff Payton-

6

Fernandez states that as an ASM she had some managerial duties, including occasionally preparing schedules for hourly employees, interviewing employees, and preparing annual performance reviews, but these tasks were "rote" and were subject to review and revision by the store manager. (*Id.* at p. 2, ¶ 6.) Plaintiff Payton-Fernandez also states that she could not give raises or promotions, nor could she fire employees. (*Id.*) Finally, Plaintiff Payton-Fernandez sets forth her experience at other stores operated by Defendants, noting that she occasionally worked at other stores and these other stores were operated in the same manner as Plaintiff Payton-Fernandez's store "according to [] identical policies and procedures." (*Id.* at pp. 3-4, ¶ 8.) Plaintiff Payton-Fernandez represents that she worked with many ASMs at different stores and often discussed the ASM job with the other ASMs, and those employees similarly "regularly worked more than 40 hours a week, were classified as exempt, were not paid overtime compensation, spent most of their time performing non-exempt work, and worked at stores with labor budgets too small to complete the necessary work, requiring them to do the work themselves." (*Id.* at p. 4, ¶ 9.)

Plaintiff Coleman also submitted a declaration in support of the conditional certification motion in which she describes a similar experience. Plaintiff Coleman states that she currently works as an ASM for Defendants' retail store in El

7

Cajón, California and has worked in this position since October 2012. (Decl. of Opt-In Pl. Lavern Coleman [D.I. 49-3], May 18, 2023, p. 1, ¶ 2.) Plaintiff Coleman asserts that she routinely works 55-60 hours per week, works on her days off to complete work, has been classified as an "exempt" employee from the beginning of her employment with Defendants until mid-2021,[1] and has not received overtime compensation during this period for hours worked above forty hours per week. (*Id.* at pp. 2-3, ¶¶ 3-4.) Plaintiff Coleman declares that as an ASM, she "routinely spend[s] the majority of [her] time performing manual, non-exempt work, including unloading trucks, tagging clothes, greeting customers and standing at the door, stocking shelves, hosting the fitting rooms, running returns from the fitting rooms and cashiers back to the floor, folding and hanging clothes, taking out garbage, working the cash register, building displays, cleaning, helping customers, and moving product." (*Id.* at p. 2, ¶ 5.) Plaintiff Coleman describes the foregoing as her "primary duties" even though the work is allegedly the same as that performed by hourly non-exempt employees. (*Id.*) Further,

---

[1] Plaintiffs state that Defendants reclassified the ASM position in February 2021, but prior to that time "ASMs continued to be classified as exempt under the FLSA, they continued to get paid on a salary-basis without overtime compensation, they continued to work under a uniform job description and pursuant to uniform corporate policies and procedures, they continued to perform non-exempt work as their primary duty, they continued to exercise little managerial authority, and they continued to work more than 40 hours a week." (Pls.' Br. at p. 10.)

Plaintiff Coleman represents that she has only a few managerial responsibilities, which are secondary to the manual tasks performed daily and include first-round interviews and assisting with preparation of annual performance reviews, and that she cannot give raises or promotions or fire employees. (*Id.* at p. 2, ¶ 6.) Plaintiff Coleman states that she performs manual work "because there [are] not enough employees working in the store to get the work done" and if she did not do the work, "it wouldn't get done[.]" (*Id.* at p. 2, ¶ 7.) Finally, Plaintiff Coleman, like Plaintiff Payton-Fernandez, represents that she has worked in Defendants' other retail stores, where she performed the same work and had little managerial authority, that "the stores each operated according to the same centralized, corporate plans, procedures and processes[,]" and that she has spoken with other ASMs throughout her tenure and they similarly "complained about the long hours, the lack of sufficient support, the lack of authority," and their classification as exempt employees who are not paid overtime despite regularly working more than forty hours per work week. (*Id.* at pp. 2-3, ¶¶ 8-9.)

Plaintiffs further rely upon the Declaration of Plaintiff Darniel Williams, an ASM for Defendants from 2001 through November 2022 who most recently worked at Defendants' retail store in Philadelphia, Pennsylvania. (Decl. of Opt-In Pl.

Darniel Williams [D.I. 49-4], May 18, 2023, p. 1, ¶ 2.)
Plaintiff Williams, like Plaintiffs Payton-Fernandez and
Coleman, states that she also routinely worked 55-60 hours per
week as an ASM but was classified as "exempt" from 2001 through
the middle of 2021 and therefore received no overtime
compensation for the hours worked above forty in a workweek.
(*Id.* at p. 1, ¶¶ 3-4.) Plaintiff Williams asserts that she
"routinely spent more than 75% of [her] time performing manual,
non-exempt work, including unloading trucks, stocking shelves,
sensoring and tagging merchandise, running returns from the
fitting rooms and cashiers back to the floor, folding and
hanging clothes, taking out garbage, working the cash register,
building displays, cleaning, helping customers, and moving
product." (*Id.* at p. 2, ¶ 5.) Similar to Plaintiffs Payton-
Fernandez and Coleman, Plaintiff Williams represents that the
work she performed was the same work as that performed by hourly
employees, but she performed manual work "because there simply
were not enough employees working the store to get the work
done." (*Id.* at p. 2, ¶¶ 5, 7.) Plaintiff Williams states that
she had "few managerial responsibilities," which included
occasional preparation of schedules for hourly employees,
conducting first-round interviews, and preparation of annual
performance reviews, but this work was "secondary" to the manual
tasks, and she had no authority to make final decisions. (*Id.* at

p. 2, ¶ 6.) Plaintiff Williams represents that she could not give raises or promotions, and she could not fire employees. (*Id.*) She also represents that she has worked as an ASM at Defendants' other retail stores but "[w]here [she] worked made no difference on [her] duties" as she purportedly performed the same work, worked the same hours, and "was equally restrained in [her] authority" at each store pursuant "centralized, corporate plans, procedures and processes." (*Id.* at p. 3, ¶ 8.) In addition, Plaintiff Williams notes that she spoke with many other ASMs employed by Defendants who shared the same experience, who also regularly worked more than forty hours per week, were classified as exempt and therefore not paid overtime compensation, spent most of their time performing non-exempt work, and complained "about the long hours, the lack of sufficient support, the lack of authority, and the hard, exhausting work." (*Id.* at p. 3, ¶ 9.)[2]

---

[2] Plaintiffs also submitted the declarations of two other ASMs, Robin Harris and Brandon Nelson, which contain representations similar to those set forth in the declarations of the named plaintiffs. Ms. Harris and Mr. Nelson set forth in their declarations their respective experiences at Defendants' retail stores in Missouri, Kansas, Oklahoma and Arkansas. Such work, the declarants state, primarily included the same manual work as that performed by non-exempt hourly employees and included few managerial responsibilities. Like the declarations of the named plaintiffs, these declarants also describe the ASMs' experiences at Defendants' other retail locations and explain that other ASMs similarly complained about performing non-exempt work the majority of the time but not receiving overtime compensation for time worked above forty hours per week. (*See* Decl. of Robin

In further support of their motion, Plaintiffs rely on the findings made by the District Court in a prior related case, *Goodman v. Burlington*, Civil Action No. 11-4395, in which the District Court certified a collective of ASMs that was "identically defined" as the collective that Plaintiffs seek to certify here. (Pls.' Br. at pp. 1-2.)[3] As noted by Plaintiffs, in *Goodman* the District Court reviewed an extensive record and concluded that Defendants' ASMs "all labored under uniform job descriptions" and "operated under the same corporate policies and procedures" which included "a uniform method of compensation and appl[ied] to all ASMs nationwide[.]" *Goodman v. Burlington Coat Factory*, No. 11-4395, 2019 WL 13039653, at *15 (D.N.J. Nov.

---

Harris [D.I. 49-5], May 18, 2023; Decl. of Brandon Nelson [D.I. 49-6], May 24, 2023.) Ms. Harris and Mr. Nelson have not filed Consent to Join forms in this action.

[3] Plaintiffs represent that the *Goodman* case involved the same claims as this case but only included ASMs who worked for Defendants prior to 2013. (Pls.' Br. at p. 3.) Plaintiffs state that in *Goodman* notice of the collective action was sent to putative opt-in members in 2012 and "[t]here was . . . a period of roughly eight years over which new ASMs hired by Defendant[s] were never provided notice of the *Goodman* case or that they could join." (*Id.*) In addition, although *Goodman* resolved claims for work performed through August 2020, Defendants purportedly continued to classify ASMs as "exempt" even after the *Goodman* settlement and failed to pay overtime premiums until February 2021. (*Id.* at p. 4.) Thus, Plaintiffs bring the instant action on behalf of (1) ASMs who began working for Defendants after the *Goodman* notice was issued in 2012 and therefore did not have notice or an opportunity to opt into the *Goodman* case and participate in the settlement of that matter, and (2) individuals who participated in the *Goodman* settlement but who were not paid overtime wages between August 2020 and February 2021. (*See id.* at pp. 3-4.)

20, 2019). The District Court in *Goodman* further concluded that the time spent by ASMs in supervisory and managerial roles was "less, both quantitatively and qualitatively, than the time spent on hourly 'non-exempt' tasks" including "'stock, front, and recover merchandise'; 'run a cash register'; 'engage in customer service'; 'clean stores'; and 'unload trucks.'" *Id.* at *16 n.53. In addition, as Plaintiffs note, Defendants' designated Rule 30(b)(6) corporate representative in *Goodman* "confirmed that every ASM across the United States receives the same uniform job description outlining their alleged essential duties and responsibilities in all retail locations" and that the *Goodman* court found that "[t]he full record now supports Burlington's corporate representative's testimony that the duties and responsibilities of all ASMs are materially the same throughout the company." *Id.* at *7 n.11.

The FLSA requires employers to pay overtime compensation for an non-exempt employee's work in excess of forty hours per week. 29 U.S.C. § 207 ("[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."). The FLSA permits actions to proceed on a collective basis provided that the plaintiffs demonstrate that they are

13

"similarly situated" to the putative collective action plaintiffs. 29 U.S.C. § 216(b). This Court articulated in its April 28, 2023 Opinion the two-step process by which courts determine whether an action may proceed as a collective action under the FLSA:

> To facilitate a collective action in FLSA cases, "[c]ourts in [the Third] Circuit follow a two-step process[.]" *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). "[A]t the first step, the court makes a preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Id.* (quoting *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 & n.4 (3d Cir. 2012)). The "'modest factual showing' standard" at this first step requires "'a plaintiff [to] produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [the named plaintiff] and the manner in which it affected other employees.'" *Zavala*, 691 F.3d at n.4 (quoting *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds, Genesis Healthcare [Corp. v. Symczyk, 569 U.S. 66, 69 (2013)]*). "Being similarly situated does not mean simply sharing a common status . . . [but] means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* at 538. "If the plaintiffs have satisfied their burden, the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi*, 729 F.3d at 243 (quoting *Zavala*, 691 F.3d at 536). When a court grants conditional certification, "[t]he 'sole consequence' . . . is the dissemination of court-approved notice to potential collective action members." *Halle [v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 224 (3d Cir. 2016)]*(quoting *Genesis Healthcare*, 569 U.S. at 75, 133 S. Ct. 1523). "At the second stage, with the benefit of discovery, 'a court following this approach then makes a

conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.'" *Camesi*, 729 F.3d at 243 (quoting *Symczyk*, 656 F.3d at 193). "[P]laintiffs must satisfy their burden at this second stage by a preponderance of the evidence." *Zavala*, 691 F.3d at 537.

*Payton-Fernandez*, 2023 WL 3145140, at *3.

At the first stage of certification, the Court applies a "fairly lenient standard" to determine whether Plaintiffs have made a "modest factual showing" that the putative collective members are "similarly situated." *Zavala*, 691 F.3d at 535 and 536 n.4. Although the term "similarly situated" is not expressly defined in the FLSA, *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 n. 17 (3d Cir. 2007), factors that courts consider in determining whether plaintiffs are "similarly situated" include "'whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment.'" *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 78 (D.N.J. 2014) (quoting *Zavala*, 691 F.3d at 536–37). "Generally, courts make this determination by examining the pleadings and affidavits in support or opposition to the proposed collective action." *Id.* (citing *Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2007 WL 2121693, at *5 (D.N.J. July 24, 2007)). "[A] plaintiff must present factual evidence, with sufficient detail, to

bolster the assertions." *Hughes v. Twp. of Franklin*, No. 13-3761, 2014 WL 1428609, at *2 (D.N.J. Apr. 14, 2014)(citing *Kronick v. bebe Stores, Inc.*, No. 07-4514, 2008 WL 4546368, at *3 (D.N.J. Oct. 2, 2008)). "Unsubstantiated, general, and vague assertions of widespread violations or 'terse declaration[s]' fail to establish the requisite 'modest' factual showing." *Id.* (quoting *Villanueva-Bazaldua v. TruGreen Ltd. Partners*, 479 F. Supp. 2d 411, 415 (D. Del. 2007)).

In the instant case, the Court finds that Plaintiffs meet this evidentiary standard and shall grant conditional certification. Plaintiffs have presented evidence that all ASMs performed similar job duties, which included work that did not materially differ from the duties of non-exempt employees. As stated in similar language in each of the declarations filed in support of the motion, Plaintiffs and other ASMs assert that they spent the majority of their time stocking shelves and moving product, working the cash register, taking out the trash, and cleaning and recovering the store, which were purportedly the same duties as non-exempt employees. Each declaration indicates that all ASMs are classified as exempt and were not paid overtime compensation for the hours worked in excess of forty hours per workweek. Moreover, each declaration sets forth Plaintiffs' and other ASMs' experiences at Defendants' other retail stores and their observations of other ASMs who

complained of similar work experiences. These declarations all state that the ASMs' experience at other retail stores was the same as Plaintiffs', as other stores were operated in the same manner according to identical handbooks and guides, and other ASMs complained about spending most of their time performing non-exempt work, working more than forty hours per week, and not being paid overtime given their exempt classification. In addition, Plaintiffs all advance the same claim of misclassification of ASMs as exempt from the FLSA overtime pay requirements, and they seek the same form of relief on behalf of themselves and all similarly situated employees. Many courts have recognized this type of claim as being appropriate for conditional certification. *See, e.g.*, *Shiptoski v. SMG Grp., LLC*, No. 16-1216, 2018 WL 11484967, at *3 (M.D. Pa. Jan. 31, 2018)(recommending granting conditional certification of FLSA collective where plaintiffs alleged "that all prospective class members were harmed by [defendant's] alleged practice of misclassifying all salaried store managers as overtime exempt"), *report and recommendation adopted*, 2018 WL 11484966 (Mar. 5, 2018); *Gervasio v. Wawa Inc*., No. 17-245, 2018 WL 385189, at *1 (D.N.J. Jan. 11, 2018)(granting motion for conditional certification in case alleging that defendant "misclassified Plaintiffs and other assistant general managers . . . as 'exempt' under the FLSA and failed to pay them overtime for

hours worked in excess of 40 hours per week"); *Atis v. Freedom Mortg. Corp.*, No. 15-3424, 2016 WL 7440465, at *4 (D.N.J. Dec. 27, 2016)(granting conditional certification where plaintiffs presented evidence that assistant vice presidents "were classified as exempt, were expected to regularly work over forty hours a week, and [were] denied overtime pay for the hours worked in excess of forty"). While Plaintiffs and members of the proposed collective action are not employed at the same location, Plaintiffs have provided sufficient factual support for their contention that Defendants have a uniform practice of classifying, managing, and compensating their ASMs. Moreover, Defendants do not oppose the pending motion and therefore do not argue that their ASMs are not similarly situated to Plaintiffs. The Court thus concludes that Plaintiffs' proffer of evidence is sufficient to demonstrate that the potential opt-in plaintiffs are similarly situated to Plaintiffs for the purpose of this unopposed motion for conditional certification.

Having found that conditional certification is appropriate, the Court next considers Plaintiffs' request that the Court approve the proposed notice and "Consent to Join Form" attached to their motion. Upon conditional certification of an FLSA collective action, the Court has discretion to provide court-facilitated notice to potentially eligible members of the collective action. *See Hoffmann-La Roche Inc. v. Sperling*, 493

U.S. 165, 169-70 (1989). The purpose of such notice is to ensure that employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170. In addition, the notice "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite the disposition of the action." *Id.* at 172. For the reasons that follow, the Court shall deny without prejudice the request for approval of the notice and consent form in the form submitted with Plaintiffs' motion and shall schedule a telephone conference to address the issues set forth below.

First, the proposed notice seeks to include the following language:

> The Parties (Plaintiffs and Burlington) had previously agreed to a proposed settlement under which each Burlington ASM in the Collective would have been able to benefit. Your share of that proposed settlement would have been approximately $____. Upon review of that proposed settlement, the Court determined that ASMs in the Collective had first to join the action by filing Consents to Join before the Parties could reach a settlement. The Court also held that only those individuals who submit a Consent to Join can share in the benefits of any settlement.
>
> Shortly after the deadline for submitting a Consent to Join, the Parties will submit a proposed settlement for Court approval. Your share of that settlement, if approved by the Court, is anticipated to be calculated in the same manner as it was in the original settlement described above.

(Decl. of Seth R. Lesser in Supp. of Pls.' Unopposed Mot. for Notice and Conditional Cert. (hereinafter, "Lesser Decl."), July 7, 2023, Ex. G [D.I. 49-7], p. 2.) As discussed at length in the Opinion denying Plaintiffs' motion for settlement approval, Plaintiffs' counsel had "neither the authority to represent future opt-in plaintiffs nor the authority to settle the FLSA claims on behalf of such potential plaintiffs" at the time they engaged in settlement negotiations. *Payton-Fernandez*, 2023 WL 3145140, at *6. The Court finds no basis to include in the notice language about the prior settlement when Plaintiffs' counsel was not authorized to engage in settlement negotiations on behalf of putative class members in the first instance. *See Collins v. DKL Ventures, LLC*, No. 16-0070, 2017 WL 11569553, at *2 (D. Colo. July 19, 2017)("[S]o long as [the named plaintiff] intends to pursue her FLSA claims as a collective action, *there can be no settlement* of FLSA claims until opt-in notices are collected."). Furthermore, any proposed language concerning the amount of money a putative opt-in would have received pursuant to the prior settlement may confuse putative opt-ins about the amount they are likely to receive if they opt into the case at this time, as the Court did not previously consider whether the prior proposed settlement was fair and reasonable and therefore has not approved the prior settlement total or the proposed distribution to each collective member.

20

Second, the proposed form of notice omits information regarding the rights of individuals who choose to opt into the lawsuit. The proposed notice advises putative opt-in plaintiffs that the parties intend to present to the Court a proposed settlement shortly after the opt-in period expires, but the notice does not advise putative opt-ins of their right to reject any settlement or litigate their claims on the merits. "In an FLSA 'collective action,' [] each FLSA plaintiff is free to settle or litigate his or her own claim regardless of what the original plaintiff or his/her counsel does" and "[a]s a result, each plaintiff is empowered to assess the merits and drawbacks of a settlement proposal[.]" *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1116 (D. Colo. 2017); *see also Collins*, 2017 WL 11569553, at *2 ("[T]he opt-ins may choose to chart a course for themselves that diverges from that of [the named plaintiff] - they may choose to settle on the same terms that [the named plaintiff] accepts, may choose to negotiate individually for a more favorable offer, or may choose to reject the settlement that [the named plaintiff] accepts and instead insist on taking their individual FLSA claim to trial."). The proposed notice must be modified to advise putative opt-in plaintiffs of whether there are alternatives available under the FLSA and, if so, set forth such alternatives.[4] In addition, the

---

[4] The Court also notes that the proposed notice informs putative

notice should include information that even if putative collective members choose to participate in a proposed settlement, the Court may reject the settlement if it finds the settlement is not fair and reasonable, at which time the parties may be required to litigate the case.

The Court also shall require the parties to modify the proposed "Consent to Join Form" attached to Plaintiffs' motion. As set forth in this Court's prior Opinion, "'[w]hen a named plaintiff files a complaint containing FLSA collective action allegations, the mere presence of the allegations does not automatically give rise to the kind of aggregate litigation provided for in [Federal Rule of Civil Procedure] 23.'" *Payton-Fernandez*, 2023 WL 3145140, at *3 (quoting *Halle*, 842 F.3d at 224). "To be included in a collective action, plaintiffs must give written consent to participate." *Id.* (citing 29 U.S.C. § 216(b)). "'The 'opt-in' plaintiff may choose to ride on the coattails of the original plaintiff or be represented by the counsel for the original plaintiffs, but he or she is not

---

collective members that "[t]he formula for determining your share of the settlement will be the same used in the original settlement reviewed by the Court." (Lesser Decl., Ex. G, p. 5.) However, potential opt-ins were never provided with the formula previously submitted to the Court. This opt-in notice, therefore, contains insufficient information to inform putative collective members of the manner by which their settlement share would be calculated.

obligated to do so.'" *Id.* at *5 (quoting *Oldershaw*, 255 F. Supp. 3d at 1115).

The notice proposed by Plaintiffs apprises putative collective members of their right to obtain counsel of their choosing, but the proposed "Consent to Join Form" is inconsistent with the proposed notice. Specifically, Paragraph 6 of the proposed notice states that "[i]f you join the lawsuit by filing the Consent to Join Form, the lawyers listed in paragraph 8 below will represent you and work with you to try to obtain overtime wages and other damages you may be owed." (Lesser Decl., Ex. G, p. 6.) The notice further states that "[i]f you prefer, you may be represented by your own counsel, at your own expense and pursuant to terms you work out with such counsel, or you may proceed without counsel." (*Id.*) By contrast, the "Consent to Join Form" does not provide putative plaintiffs with an option to retain their own counsel. The language in the "Consent to Join Form" states:

> I designate Klafter Lesser LLP and Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins to represent me in this case and to make decisions on my behalf concerning the litigation[.]

(*Id.* at p. 8.) This language provides putative plaintiffs only one option if they seek to join the lawsuit, as it requires opt-in plaintiffs to accept representation by Plaintiffs' attorneys and forgo the option of retaining their own counsel or

proceeding without counsel. The "Consent to Join Form" must therefore be modified to ensure that putative plaintiffs have an opportunity to proceed in the litigation through other counsel or *pro se*. *See Amoko v. N&C Claims Serv., Inc.*, 577 F. Supp. 3d 408, 417-18 (D.S.C. 2021)(requiring modification to proposed notice and consent form where proposed form suggested that potential FLSA collective members must be represented by the plaintiff's counsel to join action); *Dardar v. Pit Stop Eatery of Houma, LLC*, No. 20-1605, 2021 WL 5513417, at *6 (E.D. La. Mar. 30, 2021)(consent form "which opt-in plaintiffs must sign to indicate that they wish to join the lawsuit, must include an option for plaintiff to select other counsel"); *Ratliff v. Pason Sys. USA Corp.*, 196 F. Supp. 3d 699, 702-03 (S.D. Tex. 2016)(requiring parties to modify notice and consent to join form where form submitted to court failed to apprise potential opt-in plaintiffs of their right to choose their own counsel in FLSA collective action).

Finally, the Court addresses Plaintiffs' request that Defendants provide the "names, addresses, telephone numbers, dates of employment, locations of employment, social security numbers, employee work number, if any, work and personal e-mail addresses, and date of birth" of all employees who fall within the above-defined collective. (*See* Proposed Order [D.I. 50], p. 2.) Plaintiffs provide no rationale for their request for such

extensive information, some of which – including dates of birth, social security numbers, and employee work numbers – implicates privacy concerns of putative collective members. Defendants shall provide Plaintiffs with a list of all ASMs that fall within the above-defined collective, the dates and locations of employment, the last known addresses of collective members, and their last known phone number and email address, if any. In the interest of privacy, however, Defendants shall not at this time produce social security numbers, dates of birth, or employee work numbers of the putative opt-in plaintiffs.[5] *Hughes*, 2014 WL 1428609, at *4 (denying without prejudice plaintiffs' request for social security numbers and dates of birth of putative collective members); *Bredbenner v. Liberty Travel, Inc.*, No. 09-00905, 2009 WL 2391279, at *3 n.3 (D.N.J. July 31, 2009)("Courts generally release social security numbers only after notification via first class mail proves insufficient.").

In conclusion, the Court finds that Plaintiffs have produced sufficient evidence to categorize the potential opt-in plaintiffs as similarly situated to Plaintiffs at this stage of the litigation, and the request for conditional certification is

---

[5] If Plaintiffs are able to demonstrate that notice by mail, email and text message is insufficient as to one or more specific potential plaintiffs, such as if the mail, email or text message to a particular individual are returned as undeliverable, Plaintiffs may file a letter requesting that the Court revisit this issue.

therefore granted. Plaintiffs' requests authorizing judicial notice of the lawsuit to all collective action members and facilitating notice by requiring Defendants to produce an electronic list of collective action members and corresponding contact information is denied without prejudice. Defendants shall produce only the names, addresses, telephone numbers, dates of employment, locations of employment, and work and personal e-mail addresses of each putative opt-in member. Finally, the parties shall meet and confer concerning a revised notice form and "Consent to Join Form" in accordance with this Memorandum Opinion and Order and shall address the issues set forth herein at a status conference to be set by separate Order.

Consequently, for the reasons set forth herein, and for good cause shown:

IT IS on this **30th** day of **October 2023,**

**ORDERED** that Plaintiffs' motion [D.I. 47] to conditionally certify this action as a collective action and for issuance of notice shall be, and hereby is, <u>**GRANTED**</u> in part and <u>**DENIED WITHOUT PREJUDICE**</u> in part; and it is further

**ORDERED** that this action shall be conditionally designated as a collective action under the FLSA consisting of "All Assistant Store Managers ("ASMs") who worked in any of Burlington's stores in the United States at any time between February 4, 2019, and February 28, 2021, except for ASMs who

participated in the *Goodman* settlement, for whom the period shall be August 20, 2020 to February 28, 2021;" and it is further

**ORDERED** that Defendants shall, within thirty (30) days of the date of this Memorandum Opinion and Order, provide Plaintiffs with a list of all ASMs that fall within the above-defined collective, the dates and locations of employment, the last known addresses of collective members, and their last known phone number and email address, if any; and it is further

**ORDERED** that the parties shall meet and confer concerning a revised notice form and "Consent to Join Form" in accordance with this Memorandum Opinion and Order.


s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE